2004 VT 123

## Dorrie L. Faulkner v. Caledonia County Fair Association and Marc's Amusement Co., Inc.

[869 A.2d 103]

No. 03-433

Present: Amestoy, C.J.,[1] Dooley,[2] Johnson, Skoglund and Reiber, JJ.

Opinion Filed December 17, 2004

Motion for Reargument Denied January 31, 2005

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

[2] Justice Dooley sat for oral argument but did not participate in this decision.

*Jan Peter Dembinski* of *Jan Peter Dembinski, PLC*, Woodstock, and *Herbert G. Ogden* of *Liccardi Crawford & Ogden, P.C.*, Rutland, for Plaintiff-Appellant.

*John Paul Faignant* of *Miller Faignant & Behrens, P.C.*, Rutland, for Defendants-Appellees.

¶ 1. **Skoglund, J.** In this personal injury action, plaintiff appeals the Caledonia Superior Court's August 28, 2003 decision granting defendants' motion to dismiss. Plaintiff argues on appeal that this action is

sufficiently distinct from the lawsuit she filed, and eventually won, for injuries sustained as a result of the same occurrence giving rise to her current lawsuit. Because we agree with the trial court that the doctrine of claim preclusion bars plaintiff from relitigating the personal injury claims she pressed in her first lawsuit, we affirm.

¶ 2. The parties do not contest the relevant facts. In 1991, plaintiff sustained injuries when a large metal panel struck her head while she was on an amusement ride at the Caledonia County Fair run by defendant Caledonia County Fair Association (County Fair). In 1994, plaintiff sued the operator of the ride, defendant Marc's Amusement Co., Inc. (Marc's), for damages resulting from her head injuries. In 1995, the U.S. District Court rendered a verdict in her favor for $5,000, and she successfully collected that amount.

¶ 3. On November 12, 1999, plaintiff suffered her first grand mal seizure. On April 5, 2000, her treating physician diagnosed her with epilepsy and determined that the 1991 head injury was the proximate cause of the epilepsy. In November 2002, plaintiff sued both defendants, seeking damages for the epilepsy that allegedly resulted from the 1991 injury. Defendants jointly filed a motion to dismiss in May 2003.

¶ 4. In the decision currently on appeal, the trial court granted defendants' motion to dismiss on two grounds. First, the court agreed with defendants that plaintiff's epilepsy claim was barred by the doctrine of claim preclusion,[3] because plaintiff's current claim differs from her 1994 claim only in that she currently alleges a more serious injury to her head. Further, the court held that its ruling applied to both defendants (even though plaintiff sued only Marc's in her first action) because they were in privity. Second, the trial court found that plaintiff's claim was time-barred under 12 V.S.A. § 512(4).[4] Plaintiff then filed this appeal.

---

[3] Although the trial court used the term "res judicata," the terms "res judicata" and "claim preclusion" are often used interchangeably. See, e.g., *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). We use the term "claim preclusion" throughout this opinion because "[t]he concept of res judicata embraces two doctrines, claim preclusion and issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action." *In re Quechee Lakes Corp.*, 154 Vt. 543, 559, 580 A.2d 957, 966 (1990) (quotations omitted). Because the question before us is whether the current action is barred by plaintiff's prior lawsuit, this case requires us to consider the doctrine of claim preclusion.

[4] Because we hold that the doctrine of claim preclusion bars plaintiff's current lawsuit, we do not reach the issue of whether the suit was timely under 12 V.S.A. § 512(4).

¶ 5. In reviewing a trial court's grant of a motion to dismiss, this Court accepts as true "all factual allegations pleaded in the complaint" and draws "all reasonable inferences from those facts." *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554, 830 A.2d 71 (mem.). "[W]hether preclusion applies to a given set of facts is a question of law, which we review de novo." *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19, 769 A.2d 668, 673 (2001) [hereinafter *In re CVPSC*].

¶ 6. As a preliminary matter, we note that plaintiff does not challenge the trial court's conclusion that, by virtue of the indemnity obligation and the unity of interests between them, privity exists between the two defendants for claim preclusion purposes. See *In re Dunnett*, 172 Vt. 196, 203 n.*, 776 A.2d 406, 412 n.* (2001) (stating that this Court will not address issues on appeal that are not briefed). Although plaintiff notes that in her first suit she sued Marc's and that in the present suit she is suing Marc's and the County Fair, she presents no argument or authority to suggest that the trial court's conclusion was incorrect. Therefore, the trial court correctly concluded that if claim preclusion barred plaintiff's claim against Marc's, it also barred her claim against the County Fair.

¶ 7. The crux of plaintiff's argument is that the trial court erred in applying claim preclusion because the cause of action in her current lawsuit is distinct from her prior lawsuit. However, as the trial court correctly explained, "plaintiff is pursuing the identical case she pursued in 1994 except that she is alleging that the injury to her head was more serious."

¶ 8. Under the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical. *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 284, 811 A.2d 655, 659 (2002). The doctrine applies both to claims that were or should have been litigated in the prior proceeding. *In re CVPSC*, 172 Vt. at 20, 769 A.2d at 673. Claim preclusion flows from the fundamental precept that a final judgment on the merits "'puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.'" *Nevada v. United States*, 463 U.S. 110, 130 (1983) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).

¶ 9. The doctrine of claim preclusion advances the efficient and fair administration of justice because it serves "(1) to conserve the re-

sources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication." *In re CVPSC*, 172 Vt. at 20, 769 A.2d at 673. By furthering these objectives, the doctrine

> ensures "the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked ... if ... conclusiveness did not attend the judgments of such tribunals."

*Nevada*, 463 U.S. at 129 (quoting *S. Pac. R.R. v. United States*, 168 U.S. 1, 49 (1897)); see also *Russell v. Atkins*, 165 Vt. 176, 179, 679 A.2d 333, 335 (1996) (recognizing that "[r]es judicata is intended to protect the courts and the parties from the burden of relitigation").

¶ 10. The policies underlying the doctrine of claim preclusion are so fundamental to our precedent-based legal system that the U.S. Supreme Court has refused to recognize "public policy" and "simple justice" as rationales for avoiding the doctrine's strict application. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-02 (1981); see also 18 C. Wright et al., Federal Practice and Procedure § 4415, at 379 (2d ed. 2002) (noting that *Federated Department Stores* "virtually extinguishes the prospect that a general fairness exception will be engrafted on claim-preclusion rules"). As the Supreme Court stated, "'[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." *Federated Dep't Stores*, 452 U.S. at 401. The Court also observed that "'[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'" *Id.* (quoting *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)). As a result, claim preclusion generally will not yield to the equities of a particular case: "The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Id.* (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946)).

■ ¶ 11. With these considerations in mind, we turn to the question of whether plaintiff's current lawsuit articulates a new claim, or attempts to relitigate the claim concluded by her prior lawsuit. In determining whether two causes of action are sufficiently similar for claim preclusion purposes, this Court has focused on whether the same evidence will support both of them. See, e.g., *State v. Dann*, 167 Vt. 119, 125, 702 A.2d 105, 109 (1997) ("For the purposes of claim preclusion, two causes of action are the same if they can be supported by the same evidence."); *Am. Trucking Ass'ns v. Conway*, 152 Vt. 363, 370, 566 A.2d 1323, 1328 (1989) ("This Court has previously characterized causes of action as the same for purposes of claim preclusion where 'the same evidence will support the action in both instances.'" (quoting *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 31 (1974))). This approach tracks the first Restatement of Judgments, which deemed causes of action the same for claim preclusion purposes "if the evidence needed to sustain the second action would have sustained the first action." Restatement of Judgments § 61 (1942).

¶ 12. As the U.S. Supreme Court has noted, however, "[d]efinitions of what constitutes the 'same cause of action' have not remained static over time." *Nevada*, 463 U.S. at 130. Indeed, the trend has been toward a broader approach, embodied in the Restatement (Second) of Judgments, requiring a plaintiff to address in one lawsuit all injuries emanating from "all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (1982) [hereinafter Restatement (Second)]; see also 18 Wright et al., *supra*, § 4407 n.22 (observing that "[t]oo many states have adopted the Restatement test to provide a complete list" and collecting examples); Note, *Claim Preclusion in Modern Latent Disease Cases: A Proposal for Allowing Second Suits*, 103 Harv. L. Rev. 1989, 1991 (1990) (observing that most courts have abandoned "old tests," including whether the later case involves the same evidence as the earlier case, in favor of the Restatement's transactional approach). The Supreme Court, in comparing the first and second Restatements, characterized the second Restatement's transaction-based definition as a "more pragmatic approach." *Nevada*, 463 U.S. at 130 n.12.

■ ¶ 13. Under the second Restatement, the scope of a "transaction" is determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or

usage." Restatement (Second) § 24(2). In making this assessment, "no single factor is determinative." *Id.* § 24 cmt. b. Additionally, "even when there is not a substantial overlap [between proofs relevant to two actions], the second action may be precluded if it stems from the same transaction." *Id.* Thus, it follows from this flexible definition that "where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction." *Id.* § 24 cmt. c.

¶ 14. Indeed, the current Restatement's approach precludes a second lawsuit arising out of the same transaction as a prior lawsuit even where the second action will include "evidence or grounds or theories of the case not presented in the first action, or . . . remedies or forms of relief not demanded in the first action." *Id.* § 25. Moreover, "[i]t is immaterial that in trying the first action [plaintiff] was not in possession of enough information about the damages, past *or prospective*, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment." *Id.* § 25 cmt. c (emphasis added).

¶ 15. Adopting these principles, we conclude that plaintiff's claim for relief in the instant case arises out of the same transaction that gave rise to the prior lawsuit. The facts underlying both cases are inextricably "related in time, space, origin, or motivation," Restatement (Second) § 24(2), because both actions spring from the same "origin" — the 1991 accident. As a result, there is substantial overlap between the proofs of both claims, with the only difference being evidence concerning the existence and cause of plaintiff's epilepsy. However, this discrepancy does not necessarily militate in favor of finding two distinct transactions, because "even when there is not a substantial overlap [of witnesses and proofs], the second action may be precluded if it stems from the same transaction." *Id.* § 24 cmt. b. Indeed, viewed together, plaintiff's two lawsuits depict one act — the 1991 accident — that caused harm to plaintiff. In such situations, "there is still but one transaction." *Id.* § 24 cmt. c.

¶ 16. Finally, viewing the two cases as stemming from the same transaction does not undermine the expectations of the parties. There is nothing in the record to suggest that, at the time of plaintiff's first lawsuit, either party expected anything other than the typical result in a personal injury case — namely, a verdict that would conclude the matter between them. As the Restatement approach recognizes, "even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by

the judgment are nevertheless supposed to embody the money equivalent of the entire injury." *Id.* § 25 cmt. c. Therefore, the fact that "in trying the first action [plaintiff] was not in possession of enough information about the damages, past *or prospective,* or that the damages turned out in fact to be unexpectedly large and in excess of the judgment" is "immaterial" to the claim preclusion analysis. *Id.* (emphasis added). Accordingly, we hold that both actions arise out of the same transaction for claim preclusion purposes, and, as a result, that this action is barred by the judgment in the previous action.[5]

¶ 17. This case is distinguishable from the cases upon which plaintiff relies that permitted subsequent actions for late-emerging latent diseases resulting from exposure to asbestos or other workplace chemicals. See, e.g., *Pustejovsky v. Rapid-American Corp.,* 35 S.W.3d 643 (Tex. 2000) (holding that plaintiff's suit against several suppliers of asbestos products for asbestos-related cancer twelve years after settling suit against a different asbestos supplier for asbestosis was not precluded by claim preclusion); *Rogers v. Kunja Knitting Mills, U.S.A.,* 520 S.E.2d 815 (S.C. Ct. App. 1999) (holding that claim preclusion did not bar plaintiff's second lawsuit for damage to internal organs resulting from workplace exposure to chemicals, despite earlier suit for dermatitis contracted from same exposure). In the asbestos cases, courts permit plaintiffs to file second suits for asbestos-related cancer, after filing asbestosis suits, because cancer is a distinct injury unrelated to asbestosis, and it does not surface until well beyond the limitations period. See *Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111, 117 n.33 (D.C. Cir. 1982) (Ginsburg, J.) (noting that defendant conceded that asbestos-related cancer is separate and distinct from, and not a complication of, asbestosis). As then Circuit Judge Ruth Bader Ginsburg wrote in *Wilson,* an asbestos case "requires [the court] to focus, not on judgments and their preclusive effects, but on statutes of limitations." *Id.* at 118. By contrast, the instant case involves a traumatic injury the consequences of which turned out to be

---

[5] We also note that the Restatement contemplates an exception to the application of claim preclusion when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." Restatement (Second) § 26(1)(b). If a party provides the court with "special reasons" for doing so, the court should afford the party "an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action." *Id.* § 26 cmt. b. The record here does not reveal that plaintiff requested or the court decided in the first action to reserve plaintiff's right to pursue a second action in the event that her injuries turned out to be more severe.

more severe than they appeared at the time of plaintiff's first lawsuit, not two separate and distinct diseases or injuries. Therefore, the asbestos and similar workplace exposure cases are inapposite. See *Pustejovsky*, 35 S.W.3d at 653-54 (limiting holding to asbestos-related diseases resulting from workplace exposure).

 ¶ 18. The instant case is best viewed not as a latent disease case, but as a "traumatic event/latent manifestation" case, "in which the plaintiff has sustained both immediate and latent injuries caused by a noticeable, traumatic occurrence." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 231 (5th Cir. 1984). Several courts have held that in such cases a single cause of action accrues for limitations purposes with the occurrence of the traumatic event. See, e.g., *Stephens v. Dixon*, 536 N.W.2d 755, 758 (Mich. 1995) (holding that plaintiff's claim for late-emerging neck disorder accrued when plaintiff sustained injuries in car accident, not when she became aware of the disorder); *Jones v. Trs. of Bethany Coll.*, 351 S.E.2d 183, 187 (W. Va. 1986) (holding that claim accrues when plaintiff sustains noticeable injury from a traumatic event, even though there may be a latent injury arising from the same event). Indeed, two courts have confronted late-emerging epilepsy claims stemming from traumatic head injuries and concluded that each plaintiff's claim accrued at the time of the initial injuries, not when the epilepsy emerged. *LeBeau v. Dimig*, 446 N.W.2d 800, 802-03 (Iowa 1989); *Rowe v. John Deere*, 533 A.2d 375, 377-78 (N.H. 1987). The instant case fits the "traumatic event/latent manifestation" profile — plaintiff's claim accrued when she suffered the blow to her head in 1991, and it is "immaterial" for claim preclusion purposes that her injuries turned out to be more severe than those for which she sought damages in her 1994 lawsuit. Restatement (Second) § 25 cmt. c.

 ¶ 19. Finally, we reject plaintiff's argument that Article 4 of Chapter I of the Vermont Constitution militates against applying claim preclusion here because doing so would be unfair. While the Restatement recognizes that the policies behind claim preclusion may be overcome "for an extraordinary reason," *id.* § 26(1)(f), such exceptions are "not lightly to be found but must be based on a clear and convincing showing of need," *id.* § 26 cmt. i. As examples, the Restatement offers cases involving the validity of a continuing restraint on liberty, child custody, divorce, or a prior litigation that "failed to yield a coherent disposition." *Id.* Because plaintiff alleges only that her injuries stemming from the 1991 accident turned out to be more serious than they appeared at the time of the first lawsuit, she has not "clearly and

convincingly shown that the policies favoring preclusion ... are overcome for an extraordinary reason." *Id.* § 26(1)(f). As explained above, the U.S. Supreme Court has recognized that "the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship." *Federated Dep't Stores*, 452 U.S. at 402 (quotations omitted).[6]

¶ 20. We are mindful that claim preclusion may cause harsh results in individual cases, but on balance we conclude that applying it here best serves the interests of all litigants and promotes the efficient administration of justice, in light of the powerful policy concerns laid out above. As the U.S. Supreme Court aptly recognized, the "doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Federated Dep't Stores*, 452 U.S. at 401 (quotations omitted). Therefore, the trial court correctly dismissed the instant case.

*Affirmed.*

---

[6] In this regard, it is also worth noting a distinction between the criteria for application of claim preclusion and those used in the context of the related concept of issue preclusion (or collateral estoppel). "[I]ssue preclusion bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the same parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Am. Trucking Ass'ns v. Conway*, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989). In determining whether to apply issue preclusion, we consider, among other elements, whether applying that doctrine in the later action is fair. *Berlin Convalescent Ctr. v. Stoneman*, 159 Vt. 53, 56-57, 615 A.2d 141, 144 (1992). As set forth above, the claim preclusion inquiry does not involve an assessment of the fairness of applying the doctrine in a subsequent action. Therefore, we reject plaintiff's argument that, under Article 4 of Chapter I of the Vermont Constitution, it would be unfair to apply claim preclusion here.