STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Unified Buddhist Church, Inc., | } | |
| Indirect Discharge Permit | } | Docket No. 253-10-06 Vtec |
| (Appeal of Lull's Brook Watershed | } | |
| Association, <u>et</u> <u>al.</u>) | } | |

<u>Decision and Order on Motion in Limine</u>

Appellants Lull's Brook Watershed Association, John Zelig, Amy Zelig, Peter Gordon, Sterling R. Monk, Marion Monk, and Heidi Luquer (Appellants) appealed from a decision of the Agency of Natural Resources to grant renewal Indirect Discharge Permit ID-9-0271 (2006[1]) to Appellee-Applicant Unified Buddhist Church, Inc. (Unified Buddhist). Appellants are represented by David Grayck, Esq.; Appellee-Applicant is represented by Hans Huessy, Esq.; the Vermont Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq.; and amicus curiae[2] Vermont Natural Resources Council (VNRC) is represented by Jon Groveman, Esq.

<u>Procedural History</u>

The proposed disposal system and the procedural history of the prior permits is

---

[1] Because the renewal permits carry the same number as the original permits, without any distinguishing factor such as the –1, –2 series of suffix numbers used for permit amendments, this decision will use the year of issuance to distinguish them. The renewal permit that is the subject of this appeal was issued on October 4, 2006.

[2] VNRC has filed a motion to alter or amend the Court's May 11, 2007 decision conferring amicus status on VNRC, asserting additional grounds for intervenor party status; that motion will be addressed in a separate decision.

1

discussed extensively in a decision of the Supreme Court relating to an earlier permit amendment: In re Unified Buddhist Church, Inc., 2006 VT 50, ¶3-9.

In 2001, the ANR issued the original Indirect Discharge Permit ID-9-0271 (the 2001 Permit) to Unified Buddhist, effective until June 30, 2006, approving a discharge from the Green Mountain Dharma Center of 15,000 gallons per day, from a sewage treatment system, with an indirect discharge into Lull's Brook, a tributary of the Connecticut River. No appeal was taken from the initial Indirect Discharge Permit; the system authorized by that permit was not constructed.

In 2003, the ANR issued amended Indirect Discharge Permit ID-9-0271-1, approving the indirect discharge of 9,500 gallons per day from a sewage treatment system. No appeal was taken from the first amended permit; the system authorized by that permit amendment was not constructed. In late 2004, the ANR issued second amended Indirect Discharge Permit ID-9-0271-2, also approving an indirect discharge of 9,500 gallons per day. The Vermont Supreme Court affirmed the Water Resources Board's dismissal of the appeal of this permit. In re Unified Buddhist Church, Inc., 2006 VT 50, ¶1. The system authorized by that permit was not constructed.

In late 2006, after the public notice and public hearing required by the statute and rules applicable to its Indirect Discharge program, the ANR issued a renewal permit, which we will refer to as Indirect Discharge Permit ID-9-0271 (2006) or "the renewal permit," effective until June 30, 2011. This is the permit on appeal in the present case, Docket No. 253-10-06 Vtec. This permit approved the indirect discharge of 9,500 gallons per day from a new proposed sewage treatment system, including septic tankage, pump stations and leach field. The leach field consists of a trench absorption design of sixteen three-trench cells for 100% dual alternation. No construction has begun on the sewage treatment system.

2

<u>Motion in Limine re Scope of Appeal</u>

Appellee-Applicant Unified Buddhist has moved in limine to exclude, from the present appeal of the renewal permit, all issues that were addressed during the issuance of its original Indirect Discharge Permit No. ID-9-0271 (2001), or in the first or second amendments to that permit in 2003 and 2004. Unified Buddhist argues that Appellants should be precluded from litigating any issues that were, or could have been, litigated in any of the prior proceedings, based on the doctrine of res judicata.[3]

Res judicata, or claim preclusion, is "founded upon the judicial economy and fairness of litigating and disposing of all issues involved in a legal dispute where the parties, subject matter and causes of action are identical or substantially identical." <u>Cupola Golf Course, Inc. v. Dooley</u>, 2006 VT 25, ¶10, 179 Vt. 427, 430 (citing <u>Lamb v. Geovjian</u>, 165 Vt. 375, 379-80 (1996)). "The doctrine of claim preclusion advances the efficient and fair administration of justice because it serves '(1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication.'" <u>Faulkner v. Caledonia County Fair Ass'n</u>, 2004 VT 123, ¶9, 178 Vt. 51, 54-55 (quoting <u>In re Cent. Vt. Pub. Serv. Corp.</u>, 172 Vt. 14, 20 (2001)).

The doctrine of res judicata is distinct from the concept of finality of an unappealed

---

[3] Appellants had also moved to strike ANR's memorandum regarding res judicata or, in the alternative, had requested leave to respond to it. Appellants argued that the ANR's memorandum was untimely when it was filed on January 22, 2007, in response to the motion in limine filed by Unified Buddhist on December 19, 2006. However, at the telephone conference held on January 12, 2007, the Court ordered that responses to all then-pending motions be filed by January 22, 2007. The ANR memorandum was timely based on that order; Appellants' motion to strike the ANR memorandum is therefore DENIED. Appellants did file a response to the ANR memorandum on January 26, 2007; their request for additional time to respond has become moot.

permit. Compare <u>Faulkner</u>, 2004 VT 123, ¶9, 178 Vt. at 54-55 with <u>In re Unified Buddhist Church, Inc.</u>, 2006 VT 50, ¶13. The former concerns prior litigation, or prior trial-type administrative adjudication,[4] in which the parties had a full and fair opportunity to litigate all claims. The latter is implicated when a party fails to appeal a final permit, in particular if a statute or case law has established the finality of an unappealed permit in the particular permit program. See, <u>e.g.</u>, 24 V.S.A. §4472; <u>Levy v. Town of St. Albans Zoning Bd. of Adjustment</u>, 152 Vt. 139, 142 (1989) (as to municipal zoning permits); <u>In re Taft Corners Assocs., Inc.</u>, 160 Vt. 583, 593 (1993) (as to Act 250).

The issue in the present case is the extent to which the doctrine also should be applied in the context of an application for a so-called "renewal permit" in the Vermont state indirect discharge permit regulatory system. In a <u>de novo</u> appeal of any ANR decision, such as the issuance of the renewal indirect discharge permit at issue in the present case, this Court is required by statute to apply "the substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h). The Agency's own practices may assist the Court in interpreting and applying the substantive standards, but the Court's basic obligation is to apply anew the substantive legal standards to the facts the Court finds from the evidence presented in the <u>de novo</u> proceedings.

Indirect discharge permits are governed generally by 10 V.S.A. §1259(e), which provides that "[e]xcept for on-site disposal of sewage from systems of less than 6,500 gpd

---

[4] In this context, we note that the ANR process resulting in the issuance of a discharge permit is a notice-and-comment type of proceeding, in which public comments are taken at a hearing held after the issuance of a draft permit by the Agency, rather than a trial type of proceeding, such as before the District Commissions under Act 250, in which parties may, for example, cross-examine witnesses and present evidence. Accordingly, although participation in the proceedings below is now a prerequisite for bringing an appeal of a municipal or an Act 250 permit, 10 V.S.A. §8504 (b) and (d), there is no such requirement for appeals from ANR permit decisions.

capacity that are either exempt from or comply with the environmental protection rules, no person shall cause any new or increased indirect discharge of wastes into Class B waters without a permit under section 1263." Section 1259(e) further provides that:

> The secretary shall not issue a permit for on-site disposal of sewage that discharges into Class B waters, unless the applicant demonstrates by clear and convincing evidence, and the secretary finds, that the discharge: (1) will not significantly alter the aquatic biota in the receiving waters; (2) will not pose more than a negligible risk to public health; (3) will be consistent with existing and potential beneficial uses of the waters; and (4) will not cause a violation of water quality standards.

The Vermont Indirect Discharge Rules (IDR), §14-601(c), provide that, "[f]or a new indirect discharge of sewage, an applicant must show by clear and convincing evidence that the discharge will meet the statutory requirements for obtaining an indirect discharge permit. The standards and requirements of these rules, when met, provide the evidence necessary to meet this statutory requirement."

Like discharge permits issued pursuant to the National Pollutant Discharge Elimination System created by the federal Clean Water Act, 33 U.S.C. § 1342, state-issued indirect discharge[5] permits are valid for a term "not to exceed five years," 10 V.S.A. §1263(d)(4), may be renewed "from time to time upon application to the secretary," and "shall be issued following all determinations and procedures required for initial permit application." Id. §1263(e).

If an indirect discharge permit has been issued, authorizing construction of a sewage system and setting standards and conditions for the discharge from that system, and that permit is not appealed, the permit holder has the right to rely on the permit during its five-year term. If any amendments are sought to the permit during its five-year term, the scope

---

[5] Indirect discharges of the type on appeal, from a source other than a publicly owned treatment works, are not regulated by the federal Clean Water Act. 33 U.S.C. § 1311(b)(1).

5

of the amendment decision, and the scope of the appeal of any amendment decision, is limited to the changes proposed by the amendment. Buddhist, 2006 VT 50, ¶10,¶20.

At least after an applicant has constructed[6] the system authorized by a final original permit, it is the ANR's practice to apply principles of issue preclusion or vested rights so as not to revisit design and construction issues in a renewal permit, but rather to assess the system's operation and compliance with the permit's conditions and performance standards. Regardless of whether this practice has been adopted as a formal procedure, 3 V.S.A. §§801(7), 801(8), 831(b), 835; or whether it forms part of the "substantive standards" applicable before the Agency, this approach is a sensible one. However, the Court declines to apply it in a situation in which construction of the project authorized by the original permit has not commenced prior to the expiration of that permit.

The fact that the ANR does not require an applicant to provide as much information to the agency in a renewal application as in the original application does not change this result. Regardless of the filing requirements, an applicant has the burden of making the same showing of compliance with the statute and rules in a renewal application as in an original application. As well as the statutory requirement, §14-602 of the Indirect Discharge Rules provides that previously-permitted indirect discharges "must comply with the current Water Quality Standards in effect at the time of permit renewal, including [with] any revisions [to the WQS] which have occurred since the permit was issued." In the present case, it is not possible to review the compliance of the facility with its existing permit, in the context of determining whether to issue a renewal permit, as it is not in operation. See IDR § 14-406(e). All that is available to review is its design and construction. See also IDR § 14-201(a) (noting that each permit is valid for five years,

---

[6] The question of how much construction or preparation may be sufficient to trigger this practice is beyond the scope of the present motion, as no argument has been made that construction has commenced.

6

despite intervening regulatory changes, but that each renewal application is viewed in light of regulatory changes since last five-year permit was issued).

In the context of a renewal permit appeal, the statute requires the Court to consider "all determinations and procedures required for initial permit application" in deciding whether a renewal permit should be issued, if those issues are properly appealed, 10 V.S.A. §1263(e), regardless of whether the same issues were considered in issuing the original permit and intervening amendments. Thus, in an appeal of a renewal permit, as opposed to that of an amendment of an unappealed permit, the Court may consider anew any issues authorized by §1263(e) or the Indirect Discharge Rules, including issues that may have been addressed in the context of prior permitting decisions. See Re: City of South Burlington (Bartlett Bay Wastewater Treatment Facility), No. WQ-01-04 Second Prehearing Conf. Report and Order, pp. 5-6 (Water Res. Bd.[7], Apr. 18, 2002)

Neither the statutory and regulatory mandates, nor the doctrine of res judicata, bars Appellants from introducing evidence or legal arguments related to issues that were, or could have been, previously litigated in prior permit proceedings. This result is the same whether it is reached under the statutory scheme or by applying the common law res judicata principles. Both the statute and the rules contemplate a necessary review of previously-litigated issues. See §1263(e); IDR §14-602.

Even the logic of limiting indirect discharge permits to a term of "no more than five years" must allow the analysis of any issues related to the previously-issued permit, the facility's compliance with it, any changes in the facility's operation, and how those affect water quality. §1263(e); IDR § 14-406(e). Otherwise the five-year term of indirect discharge permits would be mere surplusage. DeBartolo v. Underwriters at Lloyd's of London, 2007

---

[7] Pursuant to 10 V.S.A. § 8504(m), decisions of the Water Resources Board are given the same weight as those of this Court.

VT 31, ¶16 (citing <u>Vt. State Colls. Staff Fed'n v. Vt. State Colls.</u>, 157 Vt. 645, 646 (1991) (statutory constructions that render provisions surplusage should be avoided). Similarly, if parties were barred from revisiting issues raised in prior permit proceedings, there would be no difference between a permit amendment proceeding and a renewal permit proceeding, which would render the provisions specifically governing renewal as surplusage. <u>DeBartolo</u>, 2007 VT 31, ¶16 (citing <u>Vt. State Colls. Staff Fed'n</u>, 157 Vt. at 646.

Because this comprehensive review is expressly contemplated by the statutory and regulatory structure, an appeal of a renewal permit is far from the type of "vexatious" litigation which the doctrine of res judicata is designed to prohibit. See <u>Faulkner</u>, 2004 VT 123, ¶9. As construction of the system approved in the expired 2001 Permit has not commenced, issues related to the design of the system, as well as operating issues, may be raised in the renewal permit proceedings.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Unified Buddhist's Motion in Limine is DENIED.

Done at Berlin, Vermont, this 31ˢᵗ day of July, 2007.

_____
Merideth Wright
Environmental Judge

8