Robinson, J.,
¶ 26. dissenting. Under Vermont’s statute governing wrongful death actions, damages are determined “with reference to the pecuniary injuries” of the surviving spouse and next of kin, and are distributed among them in proportion to their respective injuries. 14 V.S.A. § 1492(b). The determination of the wrongful-death-act beneficiaries’ pecuniary injuries is ultimately one of fact. For that reason, when a court adjudicates the amount of the damages awardable to the personal representative of the beneficiaries on account of a wrongful death, or the relative *279 proportion of those damages to be allocated to each of the respective statutory beneficiaries, that determination is an adjudicated fact that has preclusive effect in subsequent actions when the criteria for collateral estoppel are satisfied. In this case, those criteria are satisfied, and the 2004 order adjudicating the relative proportion of the statutory beneficiaries’ pecuniary damages has preclusive effect in subsequent proceedings in which the relative proportion of the statutory beneficiaries’ pecuniary damages is at issue. In asserting that the wrongful death statute requires a “fair and equitable distribution,” ante, ¶ 20, of each wrongful death settlement in light of the circumstances then presented, the majority adopts a framework that is at odds with the wrongful death statute and our cases, and embraces a holding that creates significant practical problems. For these reasons, I dissent. The plain language of the wrongful death statute, and our case law applying that statute, make it clear that the damages that can be awarded in a wrongful death case are determined with reference to the pecuniary injuries of the surviving spouse and next of kin, that the proceeds of a wrongful death action are distributed among statutory beneficiaries in proportion to their respective injuries, and that the factors driving the calculation of wrongful death damages and the distribution of wrongful death proceeds are one and the same.
¶ 27. The wrongful death statute provides that the court or jury before whom a wrongful death case is tried “may give such damages as are just, with reference to the pecuniary injuries resulting from such death, to the [spouse] and next of kin.” 14 V.S.A. § 1492(b). The personal representative is required to distribute the proceeds “in proportion to the pecuniary injuries suffered, the proportions to be determined upon notice to all interested persons in such manner as the superior court . . . shall deem proper and after a hearing.” Id. § 1492(c); see Bassett v. Vt. Tax Dep’t, 135 Vt. 257, 259, 376 A.2d 731, 733 (1977) (“Clearly, under the statute, distribution is to be in direct proportion to pecuniary injuries suffered from the wrongful death, a factor not considered in distribution of ordinary estate assets.”). The statute is not ambiguous on this point and should be construed consistent with its plain meaning. See In re Willey, 2010 VT 93, ¶¶ 11-12, 189 Vt. 536, 14 A.3d 954 (mem.) (denying trial court power under 14 V.S.A. § 1492(c) to control how wrongful death proceeds were invested because the “plain meaning” of the statute allowed trial *280 court to determine only how the proceeds were distributed); Mier’s Adm’r v. Boyer, 124 Vt. 12, 13, 196 A.2d 501, 502 (1963) (“[Wjhere the meaning of a statute is plain, the courts must enforce it according to its terms.” (citation omitted)).
¶ 28. Nearly a century ago, this Court explained that in determining wrongful death damages the factfinder should determine “ ‘what amount is a just compensation for the financial loss which the evidence shows will probably be directly or proximately caused by the death of the victim.’ ” D’Angelo v. Rutland Ry. Light & Power Co., 100 Vt. 135, 138, 135 A. 598, 599 (1927) (quoting Bond v. United R.R.’s, 113 P. 366, 369 (Cal. 1911)). Although the statute speaks of “pecuniary,” or financial loss, this Court has long held that such loss encompasses intangibles such as the “loss of intellectual and moral training and proper nurture by a child, and loss of her husband’s care and protection by a widow.” Lazelle v. Town of Newfane, 70 Vt. 440, 445, 41 A. 511, 512 (1898). We reiterated this understanding of the wrongful death statute more recently, explaining, “[t]he term ‘pecuniary injuries’ does not limit recovery to purely economic losses. In cases where it has been construed by this Court, the term has been held to contemplate compensation for lost intellectual, moral and physical training, or the loss of care, nurture and protection.” Mobbs v. Cent. Vt. Ry., 150 Vt. 311, 316, 553 A.2d 1092, 1095 (1988); see also Clymer v. Webster, 156 Vt. 614, 629-30, 596 A.2d 905, 914 (1991) (concluding that damages under the wrongful death act can include damages suffered by parents of an adult child resulting from the loss “of the society of that child”). Accordingly, in calculating wrongful death damages, the factfinder “may ‘consider the physical, emotional, and psychological relationship of the parties, as well as their living arrangements, . . . the harmony of family relations, and the commonality of interests and activities.’ ” Mears v. Colvin, 171 Vt. 655, 657-58, 768 A.2d 1264, 1267 (2000) (mem.) (quoting Clymer, 156 Vt. at 630, 596 A.2d at 914) (quotations omitted).
¶ 29. The connection between the determination of wrongful death damages in the first instance and the distribution among statutory beneficiaries of sums recovered in a wrongful death case is critical to the analysis in this case. See In re Estate of Cote, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264 (“All relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole.” (citation omitted)). At *281 common law, all actions for personal injuries died with the person injured, so that a surviving spouse or next of kin had no recourse for losses they suffered when a spouse, parent, or child died as the result of another’s wrongful act. Lazelle, 70 Vt. at 443-44, 41 A. at 511-12. Wrongful death damages are recoverable by a surviving spouse or next of kin solely by force of statute, and are both driven and limited by the individual and cumulative pecuniary losses sustained by these statutory beneficiaries. Id. No other factor beyond the pecuniary damages suffered by the beneficiaries can support an award of wrongful death damages; the total damages that can be awarded to the personal representative of the beneficiaries is the sum of the individual beneficiaries’ own respective pecuniary damages. The proceeds that are actually recovered in a wrongful death action — whether they are equal to or are less than the sum of the beneficiaries’ respective pecuniary damage — are likewise divided among those beneficiaries in proportion to their respective shares of the cumulative damages. In short, the assessment that drives the availability and limit of damages in a wrongful death case also drives the distribution of wrongful death proceeds among those beneficiaries.
¶ 30. Accordingly, a court’s determination of the relative proportions of the statutory beneficiaries’ losses is as much an adjudicated fact as the court’s determination of the total damages to be awarded in the first place. Nobody would suggest that the personal representative in a wrongful death case could return to court years after the court’s initial damage determination in order to seek more damages, even if intervening events had unfolded in ways that were not contemplated by the court at the time of its original damage award such that the actual losses suffered by the statutory beneficiaries were greater than anticipated at the time of the judgment. See, e.g., Faulkner v. Caledonia Cty. Fair Ass’n, 2004 VT 123, 178 Vt. 51, 869 A.2d 103 (concluding that plaintiffs personal injury claim for damages from epilepsy resulting from head injury at fair was precluded where plaintiff had previously recovered a $5000 verdict for head injury, before epilepsy manifested). The Restatement (Second) of Judgments explains:
Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who *282 has recovered a judgment against a defendant in a certain amount becomes dissatisfied with [the] recovery and commences a second action to obtain increased damages, the court will hold [the plaintiff] precluded .... It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment.
Id. §25 cmt. c (1982).
¶ 31. Nor could one of the beneficiaries of a wrongful death award seek to reopen the distribution of that award among the beneficiaries on the ground that, in light of subsequent events, the court’s initial assessment of the relative past and prospective pecuniary injuries of the respective beneficiaries proved to be inaccurate. We have recognized that “ ‘damages, in their very nature, are not susceptible of exact computation.’ ” Mobbs, 150 Vt. at 316, 553 A.2d at 1096 (quoting Johnson v. Hoisington, 134 Vt. 544, 547, 367 A.2d 680, 682 (1976)) (internal alteration omitted). Once the beneficiaries’ respective losses — whether their collective total, the proportion among them, or both — is adjudicated by a court, that determination has the status of an adjudicated fact.
¶ 32. Whether the court’s factual determination of the relative pecuniary injuries of the beneficiaries in the context of the wrongful death action implicating various automobile insurance policies has preclusive effect with respect to the determination of the beneficiaries’ proportionate injuries in connection with a distinct action against a different defendant but arising from the same wrongful death turns on ordinary principles of claim preclusion.[7] In particular, the final judgment in previous litigation bars subsequent litigation “if the parties, subject matter, and causes of action in both matters are the same or substantially identical.” Faulkner, 2004 VT 123, ¶ 8 (internal alteration omitted).
*283 ¶ 33. In this case, the statutory beneficiaries with respect to the distribution of the wrongful death proceeds resulting from the malpractice settlement are the same as with respect to the 2004 court order distributing the automobile insurance proceeds. The subject matter and cause of action in the two matters is the same: determination of the beneficiaries’ relative pecuniary injuries as a result of decedent’s death for the purposes of distributing proceeds from a wrongful death action pursuant to 14 V.S.A. § 1492(c). It’s hard to imagine a closer identity of parties, subject matter and causes of action between the adjudicated distribution of the proceeds of a wrongful death settlement with various automobile insurance carriers and the distribution of wrongful death proceeds at issue here. Although in this case, on account of multiple settlements with different tortfeasors, funds were recovered in several installments to apply toward the beneficiaries’ respective and collective pecuniary injuries, the relative proportions of those injuries were established in the first proceeding. Issue preclusion applies, and the parties are bound by the court’s 2004 determination of the beneficiaries’ relative pecuniary injuries.[8]
¶ 34. In reaching a different conclusion, the majority adopts a framework that is at odds with the plain language and structure of the wrongful death statute, as well as our prior case law. Its framework would invite relitigation of wrongful death distributions and inconsistent rulings, undermining the finality of judgments in wrongful death cases.
¶ 35. The majority’s assertion that each of the distribution petitions filed by the estate in this case presented “a separate issue for the court to determine a fair and equitable distribution of each settlement in light of the circumstances then presented,” ante, ¶ 20, completely ignores the plain language of the statute. The relevant subsection of the wrongful death statute does not instruct the court to make a “fair and equitable distribution” of wrongful death proceeds; neither term even appears in the *284 statute. See McAllister v. AVEMCO Ins. Co., 148 Vt. 110, 112, 528 A.2d 758, 759 (1987) (explaining that Court will expand plain meaning of statute by implication only when necessary to make the statute effective). Rather, the wrongful death statute requires the court to distribute the proceeds “in proportion to the pecuniary injuries suffered” by the respective beneficiaries. 14 V.S.A. § 1492(c); see Mier’s Adm’r, 124 Vt. at 13, 196 A.2d at 502; accord JW, LLC v. Ayer, 2014 VT 71, ¶ 11, 197 Vt. 118, 101 A.3d 906 (“[WJhere [statutory] language is unambiguous” court construes according to “statute’s plain meaning”). As noted above, this is a factual determination requiring the court to ascertain each beneficiary’s losses, and then determine the ratios between them. It is not a free-floating admonition to do what’s fair.
¶ 36. In redefining the trial court’s charge as one of simply fairly dividing the proceeds of the wrongful death settlement, the majority severs the connection between the calculation of wrongful death damages in the first place — based on the beneficiaries’ respective and cumulative pecuniary losses — and the distribution of proceeds from the wrongful death claims. It treats the proceeds of the malpractice settlement as a pool of money available to be distributed fairly, without recognizing that the parties’ respective losses both drive and limit the available damages in a wrongful death case. In this case, as in many, the parties did not litigate the actual question of damages against any of the wrongful death defendants, because the claims against these defendants were resolved by settlement. But the ratios between the beneficiaries’ respective pecuniary injuries are no more fluid through time than the total wrongful death damages that flow from those pecuniary injuries.
¶ 37. Nothing in our case law supports the majority’s recharacterization of the role of the factfinder in distributing wrongful death proceeds. The majority cites Estate of Tilton v. Lamoille Superior Court, 148 Vt. 213, 216, 531 A.2d 919, 921 (1987), for the observation that 14 V.S.A. § 1492(c) “is directed toward fair distribution of a wrongful death award among competing claimants.” In making the leap from this observation concerning the goal of the wrongful death statute to its assertion that the statute empowers the court to make distinct equitable allocations of wrongful death proceeds each time a new infusion becomes available, the majority conflates the underlying purpose of the statute with the standard the Legislature has adopted to *285 promote that goal: the relative proportion of each beneficiary’s pecuniary injury.
¶ 38. Because Vermont’s statute predicates the distribution of wrongful death proceeds on a specific factual finding that has preclusive effect, the majority’s reliance on two cases from Ohio is misplaced. Ante, ¶ 21. The Ohio statute governing distribution of wrongful death proceeds in the cases relied upon by the majority authorizes the court to distribute proceeds “in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries.” Ohio Rev. Code § 2125.03(A)(1). Although the beneficiaries’ respective losses are a recognized factor in the calculus, they are not the only factor identified in the statute. Moreover, although the statute identifies factors to which the court must give “due regard,” it ultimately gives the court broad discretion to divide the proceeds in a way that is equitable. For that reason, the Ohio wrongful death statute is completely different from Vermont’s with respect to whether a distribution of wrongful death proceeds is a general equitable determination based on the circumstances before the court at a given time, without regard to past rulings.
¶ 39. My concern that the majority’s approach is unfaithful to the requirements of Vermont’s wrongful death statute is not just a technical one; I believe the majority has opened the door to a host of practical problems. If the majority means what it says, then every time an individual dies as a result of wrongful acts of multiple tortfeasors, and every time claims against a single tortfeasor are satisfied through successive judgments or settlements with different insurers, disputatious beneficiaries will be entitled to their day in court to establish their claims to a share of this particular infusion of wrongful death proceeds. Although the passage of time between the court’s initial distribution order in this case and the distribution petition at issue in this appeal has been significant, there is nothing about the court’s reasoning that limits its holding to that factual circumstance. Even if the wrongful death settlements were only two years apart, or six months apart for that matter, any beneficiary — including one dissatisfied with the last distribution order — would be entitled to insist on a new hearing and a new adjudication of the most equitable allocation of this settlement. They would be allowed to marshal new and different evidence each time the personal *286 representative filed a petition to distribute wrongful death proceeds. And there would be nothing to guard against multiple inconsistent rulings, since each distribution would rise or fall on its own merits.
¶ 40. For all of these reasons, I part ways with the majority’s analysis, and its decision to remand this case to the trial court. I would treat the proportional distribution reflected in the 2004 order as preclusive, and would distribute the current proceeds in the same proportion.

 The claim at issue in this appeal was against the estate’s attorney. But the damages in that malpractice case were calculated based on the damages that should have been collected from the University of Vermont and others in connection with the wrongful death claim against the University of Vermont (UVM) and others. For the purposes of this analysis, I accordingly treat the proceeds as proceeds from the wrongful death claim against UVM and others even though the third claim was actually a malpractice claim.

 Because each of the claims against the respective tortfeasors was resolved by settlement, the court was never called upon to determine the beneficiaries’ total individual or collective pecuniary injuries; it only had to determine the relative proportions of the beneficiaries’ injuries. Whether a court’s determination of the total pecuniary injury suffered by an individual or the group would have preclusive effect in a subsequent action against a different tortfeasor would depend upon the application of the principles of collateral estoppel in that distinct context.