Dooley, J.,
¶ 44. dissenting. I agree with the majority that the trial court was correct to conclude that the May 2009 foreclosure judgment was vacated by the November 2010 dismissal of the first foreclosure action. However, I cannot agree with their answer to the “central question” of this case; that is, whether subsequent claims for default on a note are permissible when a lender has previously accelerated a borrower’s repayment obligations, brought suit for the entire amount due on the note, failed to prosecute the action, and had it dismissed with prejudice. Ante, ¶ 18. Because any answer to the “central question” is 100% dicta, I would not answer it. If we have to answer it, I would say that such claims are not permissible. If we have to rule on the merits, I would adopt the reasoning of the Supreme Courts of Ohio and Maine, and hold that no subsequent missed payments under an accelerated note, regardless of whether they occurred before or after an action adjudicating foreclosure, can give rise to a new claim that would save lender’s case from dismissal on res judicata grounds, absent an indication the parties had modified the terms of the agreement or the lender had reinstated the loan, neither of which is present in the instant case. Accordingly, I dissent.
¶ 45. At the outset, I view the context of this case very differently than the majority. The majority states its context as a practical downside to full application of claim preclusion in this case:
The practical downside is that this approach deprives the lender of any repayment of principal or interest on a significant loan, while yielding the borrowers a free, or *47 deeply discounted, house. By insulating the borrowers from any legally enforceable obligation to make future payments to lender, this approach imposes on lender a cost for its procedural default that may be wholly disproportionate to the lender’s infraction. In fact, the consequences of such a rule might be to discourage lenders from engaging in the kind of forbearance and negotiation that preceded the trial court’s dismissal of the first foreclosure action in this case.
Ante, ¶ 27 (footnote omitted). This “practical downside” analysis is persuasively critiqued in a comment in the Yale Law Journal:
Eight years after the start of America’s housing crisis, state courts are increasingly confronting an unanticipated consequence; what happens when a bank brings a foreclosure suit and loses? Well-established legal principles seem to provide a clear answer: the homeowner keeps her house, and res judicata bars any future suit to foreclose on the home. Yet state courts around the country resist this outcome.

When addressing faulty foreclosures, courts are afraid to bar future attempts to foreclose — that is, afraid of giving borrowers “free houses.” While courts rarely explain the reasoning behind this aversion, it seems to arise from a reflexive belief that such an outcome would be unjust. Courts are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of “free houses.”
This Comment argues that this approach is misguided; courts should issue final judgments in favor of homeowners in cases where banks fail to prove the elements required for foreclosure. Furthermore, these judgments should have res judicata effect — thus giving homeowners “free houses.” This approach has several benefits: it is consistent with longstanding res judicata principles in other forms of civil litigation; it provides a necessary market-correcting incentive to promote greater responsi *48 bility among foreclosure litigators, and it alleviates the tremendous costs of successive foreclosure proceedings.
M. Wachspress, et al., Comment, In Defense of “Free Houses ”, 125 Yale L.J. 1115, 1115-16 (2016) (footnote omitted).
¶ 46. The analysis captures exactly what is occurring in this case. While I acknowledge the majority’s analysis is more creative than that in other cases rejecting the effect of claim preclusion, and may be a compromise of sorts, it is not consistent with settled claim preclusion law, gives the lender a windfall it doesn’t deserve and, most important, lets lender’s counsel avoid most of the consequences of the way it practices law in our courts.
¶ 47. It is the last reason that particularly motivates this dissent. I doubt a loss in this case will have much effect on lender, which, by its own estimation, has serviced approximately 1.65 million loans, totaling $351 billion dollars. Cenlar Ratings: Fitch Affirms Cenlar FSB’s U.S. RMBs Servicer Ratings, Cenlar (Dec. 8, 2015), http://www.cenlar.com/about/ratings [https://perma.cc/ 8GWL-6ZV5]. But the default here was not caused by lender; instead it was caused by the inaction of lender’s lawyers. Lender’s counsel, Schechtman Halperin Savage, LLP — who also served as counsel to lender in Deutsche Bank v. Pinette, 2016 VT 71, 202 Vt. 328, 149 A.3d 479, a very similar case — emphasizes that it has “conducted thousands of foreclosures throughout Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont.” Practice Areas: Foreclosure and Default Servicing, Shechtman Halperin Savage LLP (2016), http://www.shslawfirm.com/ practice-areas/foreclosure-and-default-servicing [https://perma.cc/ 2DSX-R683]. The firm is apparently what has become known as a foreclosure mill.
¶ 48. The modus operandi of the law firm, at least as demonstrated in this case and Pmette, is to deal with obstacles in its handling of foreclosure cases by ignoring those obstacles and filing a new mortgage foreclosure action essentially identical to the one it had already filed. In Pmette, the firm filed a foreclosure action which was dismissed because it failed to file for a default judgment as ordered by the court and responded by filing a new mortgage foreclosure action. This one was dismissed with prejudice for failure to prosecute. Instead of seeking relief from the dismissal, the firm again filed a new mortgage foreclosure action. When the mortgagor moved to dismiss claiming the new action *49 was precluded by res judicata, the firm failed to answer the motion, and the court dismissed the action. Only then did the firm come awake and move to reopen. When it lost in the trial court again, the firm appealed to this Court and attempted to file in this Court a document critical to its appeal theory even though it had never been presented to the trial court. Pinette, 2016 VT 71, ¶ 15. The history of this case has fewer twists and turns, but the conduct is consistent. The first foreclosure action was dismissed with prejudice when the firm failed to appear in person or by telephone at a status conference. Id. ¶ 4. The firm did not move to reopen or appeal the dismissal. Id. ¶ 5. Instead it filed a new foreclosure action alleging a new default, but provided defendant with no new notice of default.
¶ 49. Allowing the firm’s modus operandi is inconsistent with every one of the policy reasons that underlie the doctrine of claim preclusion: “(1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication.” In re Cent Vt. Pub. Serv. Corp., 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). Fundamentally what the firm’s litigation strategy seeks is inconsistent adjudication.
¶ 50. The majority argues that fully enforcing claim preclusion against plaintiff will result in lenders refusing to negotiate settlements. The dismissals in these cases have nothing to do with the substance of the lenders’ position or actions, and certainly nothing about whether they should enter into forbearance agreements with borrowers. Instead, they have everything to do with how counsel for the lender engages in litigation and fulfills its obligation to the trial courts. On this basis, any remedy we impose is not disproportionate to the actions and inaction that caused the remedy. We need to send a clear message to counsel and its clients that these methods of conducting litigation are unacceptable and will not get them the remedies they seek even in part. The message should not be that they may file foreclosure action after foreclosure action until they finally win.
¶ 51. Having addressed the difference of perspective of what is at stake in this litigation, I return to my first point. As the majority recognizes in its discussion of Alden v. Alden, it is inappropriate to determine the preclusive effect of a judgment in *50 a case before the court on a future action. 2010 VT 3, 187 Vt. 591, 992 A.2d 298 (mem.). Even though it affirms the superior court dismissal in this case, the majority opinion violates the Alden rule and goes far beyond determining the preclusive effect of the judgment in this case or in the earlier case with respect to a new mortgage foreclosure action. It instructs the plaintiff on how to structure its actions and mortgage foreclosure complaint so it can prevail in the next mortgage foreclosure action. It is an exercise in dicta that does not have precedential effect.
¶ 52. I join the majority in voting to affirm the decision of the superior court without that court’s dicta about what it might do if lender brings another foreclosure action. For the same reason as I believe the trial court cannot bind a future trial judge on how to rule on a new foreclosure action, I do not believe it is appropriate for this Court to do exactly the same thing.[12] Lender is not entitled to a lesson in how to get it right. The clear message should be that counsel must stop the action and inaction that creates the dismissals in the first instance.
¶ 53. Because, consistent with my perspective view, I disagree with the majority’s dicta on how lender can be successful in the next mortgage foreclosure action, I will address the merits of the “central question,” recognizing that my view is also dicta. I have addressed its “practical downside.” I now address the “logical tension.” My point here is that the majority’s remedy is inconsistent with settled claim preclusion law.
¶ 54. This case is fundamentally an action on a note. If borrowers owe money under the note, and fail to pay under the terms of the note, lender can obtain a judgment for that amount and can foreclose on the mortgage property to ensure payment of the money owed. If borrowers owe no money on the note, the security represented by the mortgage is of no effect and lender cannot foreclose. In the first action, the complaint alleged “Mortgagor(s) has/have failed to make the payments called for under *51 the Note and Mortgage” and “The failure of Mortgagor(s) to make payments as set forth herein, constitutes a breach of the subject Note and mortgage held by Plaintiff.” It repeated these claims in Count II of the complaint. In the remedies section, lender sought an order that “defendants . . . pay to the Clerk of the Court for the benefit of plaintiff all amounts due and to become due on the Note and Mortgage, with interest thereon, together with sums expended, reasonable attorney’s fees and costs.” It also requested the court to “award deficiency judgment against defendants for any amounts due and owing under the Note after disposition of the Mortgaged premises and application of the proceeds from that disposition to the debt of defendant, if applicable by law.” There is nothing in the complaint that mentions borrowers’ obligation to make monthly payments or describes acceleration of those payments.
¶ 55. The most persuasive of the cases dealing with this issue is Johnson v. Samson Construction Corp., where the Supreme Judicial Court of Maine held that a mortgagee “cannot avoid the consequences of [its] procedural default” by attempting to relitigate nonpayments on a note the debt of which had been accelerated in a previous lawsuit dismissed with prejudice. 1997 ME 220, ¶ 8, 704 A.2d 866. The heart of the Maine court’s analysis was as follows:
[Lender’s] first cause of action alleged that [borrower] “defaulted on its obligations to the Plaintiff under the Note” and demanded payment of the entire unpaid principal balance. This suit was an action for the accelerated debt. Once [lender] triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note. The court’s dismissal with prejudice of the first action operated “as an adjudication on the merits.” That judgment bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that [borrower] defaulted on the note and that [lender] is entitled to a judgment for the amount due under the note.
Id. (citations omitted). The Johnson analysis is explained in more detail in U.S. National Bank Ass’n v. Gullotta, 2008-Ohio-6268, 899 N.E.2d 987. The analysis in both cases applies here.
*52 ¶ 56. I recognize there are conflicting decisions, but they are far less persuasive. They are examples of the Yale Law Review’s article’s description of “Courts [that] are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of ‘free houses.’ ” Wachspress, supra, 125 Yale L.J. at 1115-16. The leading case is Singleton v. Greymar Assocs., 882 So. 2d 1004 (Fla. 2004), which acknowledges that it is creating a separate rule of claim preclusion for mortgage foreclosure cases:
This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note — merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.
Id. at 1007-08.
¶ 57. The decision is explained at least in part because there was no claim for judgment on the note in the first action, id. at 1007, and the case is analyzed as an equitable mortgage foreclosure case and not, first and foremost, as an action on the note with the mortgage as security. There is no analysis of how there can be a new default on an accelerated note. Apparently “new default” are a form of magic words, and the mortgagee faces no adverse consequences, either in the availability of foreclosure or in the sum it can recover, as a result of the dismissal of the first foreclosure action.
¶ 58. This leads me to the majority’s “compromise.” In support of its position that dismissal of the first complaint with prejudice did not preclude a second foreclosure action, the majority argues *53 that when a court delivers judgment in a case where a lender has sought to accelerate the entire debt, be it through a full adjudication on the merits or a dismissal for failure to prosecute, the court has effectively determined that the borrower “is not, in fact, in default.” Ante, ¶ 26. It goes on to state that because default by the borrower is a “condition precedent to the acceleration,” a judgment for the borrower “seems to invalidate the attempted acceleration, not [ ] preserve it as an element of a final judgment that precludes future attempts to collect on the note.” Ante, ¶ 26.
¶ 59. There is nothing in the complaint that is consistent with this theory. It does not seek judicial endorsement of its decision to accelerate that note; instead it seeks a judgment for the entire unpaid amount of the note, including principal that would come due in the future if plaintiff never accelerated.[13] The majority’s description exactly fits a situation where, after default on one or more monthly obligations, the plaintiff declares a default but does not accelerate the payment obligation and sues to collect the unpaid installments and foreclose the mortgage as security for the payment of those installments. In such a situation, if the action were dismissed with prejudice, plaintiff would lose exactly what it sought — the unpaid installments — and could proceed to declare a new default if later installments were unpaid and, at its option, accelerate the payment obligation. In this case, plaintiff sought the entire amount due under the note, together with interest and fees, and lost. Having put the entire amount in issue, the dismissal of the case necessarily precludes recovery of any of that amount and, therefore, the mortgage foreclosure. As the Ohio Supreme Court noted, accepting the majority’s position “would be like allowing a plaintiff in a personal-injury case to save his claim from the [preclusion] rule by amending his complaint to forgo a couple of months of lost wages.” Gullotta, 2008-Ohio-6268, ¶ 37.
¶ 60. In summary, nothing about the facts of this case should compel us to find an exception to the long established policies undergirding the doctrine of res judicata. Lender had ample opportunities to pursue its claims. Lender alone chose to accelerate defendants’ payment obligations under the note and claim *54 all amounts due in both complaints, as well as to miss the status conference that led the trial court to dismiss the initial action. Borrowers have been subjected to ongoing litigation in this matter since 2008; our judicial system has borne the burden and costs associated with lender’s “inadvertence or mistake[s].” Lender and its counsel are sophisticated entities, well-versed in the Vermont foreclosure process, and have shown no justification for a deviation from long-standing principles of claim preclusion, the enforcement of which is “essential to the maintenance of social order,” to securing the “peace and repose of society,” and to enhancing public confidence in judicial tribunals. Nevada v. United States, 463 U.S. 110, 129 (1983). “[P]ublic policy dictates that there be an end [to this] litigation.” Faulkner v. Caledonia Cty. Fair Ass’n, 2004 VT 123, ¶ 10, 178 Vt. 51, 869 A.2d 103 (quotation omitted).
¶ 61. I dissent.

 The posture of this case explains why I would not hold that borrowers are prevented from obtaining a full claim preclusion remedy because their counsel stated that he was not arguing that a dismissal with prejudice of a foreclosure “means you can never foreclose on a mortgage again.” This was a statement about what should happen in a new future foreclosure action, a subject not before the court. It was impossible for counsel to predict what the superior court would say about the availability of a third foreclosure action and certainly was impossible to predict the majority’s dicta on the subject.

 Nor does the note in this case contain an authorization for plaintiff to “unaccelerate” the note without the consent of defendant. This distinguishes this case from Deutsche Bank Trust Co. Americas v. Beauvais, 188 So. 3d 938, 946-49 (Fla. Dist. Ct. App. 2016), which holds that the terms of the note and mortgage do allow for unilateral unacceleration.