2014 VT 54

## In re Hale Mountain Fish and Game Club, Inc.

[103 A.3d 890]

No. 12-412

Present: **Dooley, Skoglund, Robinson and Crawford, JJ., and Eaton, Supr. J., Specially Assigned**

Opinion Filed June 6, 2014

Motion for Reargument Denied July 29, 2014

*Herbert G. Ogden* of *Ogden Law Offices, P.C.,* Danby, for Appellants.

*Rodney E. McPhee* of *Kenlan, Schwiebert, Facey & Goss, P.C.,* Rutland, for Appellee.

¶ 1. **Dooley, J.** Neighboring landowners Owen and Katherine Beauchesne bring their fourth appeal to this Court from various proceedings involving their complaints challenging the operation of Hale Mountain Fish and Game Club. Here, neighbors appeal the judgment of the Environmental Division of the superior court that Hale Mountain is entitled to reissuance of a zoning permit for certain enumerated improvements on its property once it received site plan approval from the Town of Shaftsbury Development

Review Board. Based primarily on principles of preservation and res judicata, we affirm the court's judgment.

¶ 2. Hale Mountain's 215-acre site in the Town of Shaftsbury has been used continuously since 1949 as a shooting range. In the late 1980s, neighbors purchased adjoining property on which they run a riding center. Over the years, Hale Mountain made numerous improvements to the property without obtaining either zoning permits or permits under Act 250, which became law in 1970. In the 1990s, Hale Mountain and neighboring landowners attempted to resolve issues concerning the timing and frequency of shooting at the club, but disagreements persisted, resulting in litigation that continues today.

¶ 3. Neighbors have challenged Hale Mountain's operation in several forums based on multiple legal theories,[1] but the primary battlegrounds have been proceedings before the former Environmental Board addressing Act 250 jurisdiction and before the Town of Shaftsbury administrative bodies and the Environmental Division addressing zoning permit requests and enforcement actions. In our summation of the procedural history of this case, we detail these proceedings separately, although they proceeded simultaneously at times.

¶ 4. We first summarize the Environmental Board proceedings, which supplied the findings that are the subject of the Environmental Division's decision on appeal. In June 2004, in response to neighbors' complaint, the District 8 Environmental Commission Coordinator concluded that both material and substantial changes at the club necessitated Act 250 review. Hale Mountain appealed to the Environmental Board, which rendered a plurality decision in August 2005 following a site visit and two-day public hearing. That decision limited Act 250 review to three specific improvements, which the Board found to substantially change a preexisting development such that they had the potential to have a significant impact with regard to the Act 250 criteria: (1) installation of a new well and wastewater disposal system in 1983; (2) installation of a replacement garage and new clay-target storage

---

[1] In two March 2010 decisions, the Environmental Division granted Hale Mountain and its principals summary judgment in neighbors' separate actions sounding in fraud and nuisance. These issues are not involved in this appeal. The rest of the issues and theories arose in the state and local permitting proceedings as summarized in the text.

trailer; and (3) improvements in connection with the commencement and operation of a beagle club in 1979.[2]

¶ 5. Neighbors appealed to this Court, arguing that the Board erred by not requiring comprehensive Act 250 review and by not making adequate findings to support its decision. In a September 2007 decision, we agreed with neighbors' second point and remanded the matter for the Board to make additional findings, specifically on any change in the intensity of use and level of noise at the club since the 1970s and on the impact of any improvements on streams and wetlands. *In re Hale Mountain Fish & Game Club, Inc.*, 2007 VT 102, ¶¶ 10-11, 182 Vt. 606, 939 A.2d 498 (mem.).

¶ 6. In February 2008, without taking additional evidence, the Board on remand issued seventeen supplemental findings of fact, including that: (1) although the level of shooting activity and noise at the club "had fluctuated slightly over the years," there had "not been an increase in intensity of shooting and noise after 1970 as compared to pre-1970 levels"; (2) the post-1970 improvements to the shooting facilities had "not caused an increase in use, shooting, or capacity at [the club] sufficient to cause any potential for significant impact under any Act 250 criterion"; and (3) the deposition of clay pigeons and spent ammunition near streams and wet areas had occurred before 1970 "without an increase in deposition or accumulation rates since that time." Hence, the Board reiterated its conclusions that there had been no significant increase in shooting or noise at the club over pre-1970 levels and that "the only substantial changes to this grandfathered shooting range that require an Act 250 permit are the discrete changes" found in the original Board decision.

¶ 7. Neighbors again appealed to this Court, arguing that the Board's findings were not supported by sufficient evidence and that its decision was precluded by its own precedent. In a February 2009 decision, we affirmed the Board's decision, stating that neighbors had "not demonstrated a basis on which to overturn either the Board's factual findings or the Board's legal conclusion that the Club has not made a substantial change to a

---

[2] In 1979, the Pittstown Beagle Club began using Hale Mountain property for beagle running. The beagle club made improvements to facilitate their use: installation of a rabbit pen, road improvements and extension of a culvert, removal of some trees, and installation of a portable toilet. The beagle club stopped using the property before 2005.

pre-existing project that would subject the entire project to an Act 250 permitting process." *In re Hale Mountain Fish & Game Club, Inc.*, 2009 VT 10, ¶ 8, 185 Vt. 613, 969 A.2d 691 (mem.).

¶ 8. Meanwhile, in April 2004, neighbors' attorney sent the Town of Shaftsbury zoning administrator a letter asking him to enforce the town's zoning regulations by requiring Hale Mountain to obtain permits for nearly twenty listed activities. In May 2004, the zoning administrator responded in writing that he saw no violation of the town's zoning bylaws. In his response, the zoning administrator briefly addressed the alleged violations and nine additional questions, indicating either that the use or structure preexisted the 1980 bylaws, that no permit was required, that a permit had been issued, or that no evidence indicated any violation. The town zoning board of adjustment (ZBA) declined to direct enforcement actions against Hale Mountain, and neighbors sought relief in the superior court's Environmental Division.[3] That appeal, docket number 149-8-04 Vtec, was eventually consolidated with another case, docket number 259-12-05 Vtec, in which the neighbors appealed from the town's refusal to act on their May 2005 demand for enforcement of the zoning bylaws.

¶ 9. After denying neighbors' motion for summary judgment in a March 2008 decision, the Environmental Division issued a supplemental interim decision in November 2008 denying the parties' cross-motions for summary judgment on the ultimate question of whether Hale Mountain had violated the town's zoning bylaws, but ruling that: (1) the fifteen-year statute of limitations in 24 V.S.A. § 4454(a) did not preclude allegations of zoning violations that occurred after May 24, 1989; and (2) "the determinations of the former Environmental Board have a preclusive effect on the same legal and factual issues material to this appeal." In making the latter ruling, the court thoroughly examined each of the issue preclusion criteria set forth in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). That decision was not appealed.

¶ 10. On December 15, 2009, nearly a year after we upheld the Environmental Board's factual findings in support of its conclusion that Hale Mountain had not made substantial changes to its preexisting operation so as to require Act 250 review of the entire project, the Environmental Division issued a third interim deci-

---

[3] The Environmental Division was then known as the Environmental Court.

sion. In that decision, the court listed the nineteen improvements at the club alleged by neighbors to have occurred between the early 1990s and 2004. The neighbors never contested that the Hale Mountain activities were permitted uses in the zoning district but argued that Hale Mountain needed permits for its land developments. Hale Mountain argued that its club activities were permitted uses in the rural residential district and that no change-of-use permits were required based on the Environmental Board's findings concerning the absence of increased activities at the club. The court agreed that the Board's previous findings entitled Hale Mountain to summary judgment on all of the use violations alleged by neighbors, but rejected the notion that zoning permits were required only when a landowner changed a property's use. The court ruled that the town's zoning bylaws required Hale Mountain to obtain permits for any new land development on the property, explaining that whether permits were required for land development was a separate question from whether there had been a "substantial change" to a preexisting development.

¶ 11. After examining the alleged improvements, the court ruled that: (1) the applicable statute of limitations barred the enforcement of alleged zoning violations that occurred before May 24, 1989; (2) the Environmental Board's previous findings precluded neighbors from alleging zoning violations predicated on an alleged change of use; (3) Hale Mountain was entitled to summary judgment regarding the improvements numbered fourteen through eighteen; and (4) neighbors were entitled to summary judgment regarding the improvements numbered one through thirteen and nineteen because those activities constituted land development requiring a zoning permit. The court also: (1) dismissed docket number 259-12-05 Vtec as duplicative of the zoning enforcement allegations contained in docket number 149-8-04 Vtec; (2) affirmed the December 2, 2005 decision of the town ZBA dismissing neighbors' second demand that the zoning administrator commence enforcement proceedings; and (3) rejected neighbors' request that it determine whether lead shot or shells constitute a public health hazard, since the zoning bylaws provided no jurisdictional authority for the court to consider such claims. The court did not rule on whether Hale Mountain's activities were permitted uses in the zoning district because neighbors did not contest that issue. On the same day, the court issued a final judgment order to the same effect, which completed the proceedings in that court

with respect to the docket numbers noted above. Neighbors appealed that final judgment but later withdrew the appeal, which we dismissed in May 2010.

¶ 12. In July 2010, Hale Mountain filed an application to obtain zoning permits for the improvements identified in the Environmental Division's December 15, 2009 order. Later that month, the zoning administrator approved the application. Neighbors appealed to the town development review board (DRB), which held a public hearing on the appeal over two days in the fall of 2010. In its October 20, 2010 decision on the application, the DRB stated that the appeal was based on the fact that the zoning administrator issued permits without DRB site plan approval. Noting that site plan review and approval were required under § 4.1.1.4 of the town's zoning bylaws permitting "group service uses," including clubs, in the rural residential district, the DRB granted neighbors' appeal without prejudice to Hale Mountain to renew its application after submitting site plans for the DRB's review. Hale Mountain appealed the decision to the Environmental Division. Neighbors filed a cross-appeal that was later dismissed by the court.

¶ 13. After issuing several decisions on procedural matters, the Environmental Division held a merits hearing in August 2012 in the case on review here, docket number 190-11-10 Vtec. Hale Mountain called three expert witnesses in support of its application. Neighbors testified on their own behalf but did not present any expert testimony to contradict the evidence presented by Hale Mountain. From the bench at the conclusion of the hearing, and later in an October 4, 2012 written decision, the court denied Hale Mountain's application without prejudice to allow the club to submit a site plan application and supporting documents for review and approval by the DRB. The court ruled that "[o]nce such approval is received and becomes final, Hale Mountain will be entitled to request that the Town of Shaftsbury Zoning Administrator complete the ministerial act of re-issuing a zoning permit for the enumerated improvements that were the subject of Hale Mountain's original application." In so ruling, the court stated that "Hale Mountain presented credible facts to show that the enumerated improvements are permitted, conditioned upon site plan approval being issued."

¶ 14. In reaching this decision, the court explicitly identified the zoning ordinance authorization for Hale Mountain's uses. Hale

Mountain's property is in the rural residential zoning district. Under § 4.1.1.4 of the bylaws, certain "group service uses" are permitted uses in that district "after site plan approval." Included in the list of group service uses are: "[c]ommunity center, hall, libraries, museums, lodge, club, park or playground operated by a governmental unit or non-profit organization." Shaftsbury Zoning Bylaws § 4.1.1.4.3. The court held that Hale Mountain's uses are "group service uses." Neighbors now appeal the Environmental Division's October 4, 2012 decision.

¶ 15. After the Environmental Division issued its decision, Hale Mountain applied for site plan approval and renewed its application for zoning permits. In April 2013, the DRB approved the site plans and permit applications. Neighbors appealed those rulings to the Environmental Division, where the matter is currently stayed pending this Court's decision in the instant appeal.

¶ 16. In their appeal from the Environmental Division's October 4, 2012 decision, neighbors argue that the court erred by: (1) determining that the only relevant zoning bylaw at issue is the group service uses bylaw; (2) applying issue preclusion to events occurring after the Environmental Board last took evidence in 2005 and to issues not previously decided; and (3) concluding that Hale Mountain could obtain a zoning permit without having all the necessary state permits. In its responsive brief, Hale Mountain primarily raises principles of issue and claim preclusion and mootness.

¶ 17. Neighbors first argue that the Environmental Division erred in assuming, based solely on the fact that Hale Mountain presents itself as a club, that the only relevant town zoning bylaw is the group service uses bylaw and that the actual use the club made of its property is irrelevant. In neighbors' view, a shooting range is neither a permitted nor a conditional use under the town's bylaws and therefore cannot be approved based merely upon the fact that Hale Mountain's corporate name includes the word "club." Comparing the other types of groups listed in the group service uses zoning bylaw, neighbors assert that a shooting range cannot be considered a club as the word is intended in the bylaw. In fact, neighbors argue that applying the group service uses bylaw as the court did violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and the common benefits clause in Chapter I, Article 7 of the Vermont Constitution.

¶ 18. ▉ Upon review of the record, we conclude that neighbors have waived these arguments by failing to raise them before the Environmental Division in the instant proceeding, and that, in any event, principles of res judicata preclude them from raising the issues in light of the Environmental Division's final judgment in docket numbers 149-8-04 Vtec and 259-12-05 Vtec. "Normally issues not raised at the trial court cannot be raised on appeal." *Taylor v. Fletcher Allen Health Care,* 2012 VT 86, ¶ 14, 192 Vt. 418, 60 A.3d 646; see *State v. Rideout,* 2007 VT 59A, ¶ 19, 182 Vt. 113, 933 A.2d 706 ("As a general rule, we will not consider issues that were not raised with specificity and clarity at trial."). Here, although neighbors questioned at times whether Hale Mountain was a nonprofit corporation, they never argued that: (1) Hale Mountain should not be considered a club under the group service uses bylaw; (2) designation as a club did not prevent an independent review of whether a shooting range is a permitted use; or (3) exclusively applying the group service uses bylaw in this case would violate the federal or state constitutions.

¶ 19. At oral argument before this Court, neighbors asserted that they had no opportunity to make such arguments before the Environmental Division because the court did not indicate that it was going to rely upon the group service uses bylaw until it made findings on the record at the August 28, 2012 hearing. The record does not support this assertion. Indeed, in its October 20, 2010 decision that was appealed to the Environmental Division, the DRB explicitly relied upon the group service uses bylaw in determining that Hale Mountain was required to seek site plan approval before obtaining permits for the improvements to the club. Thus, neighbors were on notice that the DRB, and later the court, understood that Hale Mountain's application was being considered under the group service uses bylaw. Nevertheless, they never raised at trial the club issue that they now seek to raise for the first time on appeal. Accordingly, we decline to consider it. We make no determination regarding the merits of the court's assumption that Hale Mountain's uses were permitted club uses under the town's bylaws.

¶ 20. In conjunction with their contention that Hale Mountain's shooting range is not a club such as to make it a permitted use subject only to site plan review, neighbors argue that because the shooting range is a preexisting nonconforming use, Hale Mountain must demonstrate that the additional structures it built on its

property were not expansions of a nonconforming use. This argument, as with neighbors' challenge to the Environmental Division's assumption of a permitted club use, is precluded by their failure to raise it below.

¶ 21. ■ In any event, even if neighbors had preserved their nonconforming use argument, we would agree with Hale Mountain that the argument is precluded by the Environmental Board's findings and determination that activities have not increased at that shooting range since the 1970s. In the original zoning proceedings, the town zoning administrator concluded that the Hale Mountain shooting range was grandfathered as a preexisting use because it had been in operation since the late 1940s, many years before the town first implemented its zoning regulations in 1980. As far back as December 2005 in docket number 259-12-05 Vtec, one of the many issues listed by neighbors for review by the Environmental Division was whether the town zoning administrator should bring an enforcement action against Hale Mountain for building and maintaining nonconforming structures. In its December 15, 2009 decision and final judgment, the Environmental Division concluded that the Environmental Board's findings concerning the nature and extent of Hale Mountain's activities since the 1970s precluded neighbors from bringing violations predicated upon an alleged change of or increase in use. Neighbors initially appealed that final judgment to this Court but ultimately withdrew their appeal, which we then dismissed. Accordingly, neighbors cannot now challenge the Environmental Division's determination that they are barred by the principle of issue preclusion from alleging violations based on a change or increase in use.

¶ 22. Neighbors argue, however, that: (1) the Environmental Division's focus on the group service uses bylaw is inconsistent with the reasons it gave in an earlier ruling for concluding that they had standing to oppose Hale Mountain's appeal of the DRB's denial of their application for zoning permits; and (2) the court's comments from the bench at the August 28, 2012 hearing suggesting that neighbors can still raise in a later proceeding whether the improvements at issue were an expansion of a nonconforming use as opposed to mere maintenance of that use are inconsistent with its later conclusion in its October 4, 2012 decision that Hale Mountain is entitled to zoning permits once it obtains site plan approval. Regarding both points, the October 4 decision is the controlling order on appeal. The fact that the

court's earlier standing decision was based in part on neighbors' statements concerning how they were impacted by Hale Mountain's alleged increased activities at the club did not preclude the court from relying on either principles of res judicata or the group service uses bylaw in ultimately ruling on the issues brought by neighbors in the present proceeding. Similarly, the court's comments at the final hearing in this proceeding, which were plainly not intended as findings, did not prevent the court from determining that neighbors were precluded from alleging violations predicated on increased use or from ruling that Hale Mountain had demonstrated that they were entitled to permits once they obtained site plan approval.

¶ 23. Next, neighbors argue that the Environmental Division erred by applying issue preclusion to events that occurred after the Environmental Board rendered its findings in 2005 and to issues not previously decided. According to neighbors, because the Board took no evidence after March 2005, issue preclusion should not bar them from presenting evidence of what happened after that time. Neighbors complain that the court blurred the distinction between evidence gathered by the Board and facts arising after the Board closed evidence in the Act 250 case. In further support of their argument, neighbors point to an affidavit they submitted in docket number 190-11-10 Vtec, the case before us, in which they stated that "[t]he alterations to the shooting areas that are covered by the zoning permit have resulted in increased shooting and hence increased noise since the Environmental Board took evidence in 2005."

¶ 24. ■ This argument is precluded by neighbors' failure to appeal the Environmental Division's December 15, 2009 decision. In docket numbers 149-8-04 Vtec and 259-12-05 Vtec, as noted, neighbors cited multiple improvements and activities that they claimed required zoning permits. The Environmental Division's December 15, 2009 decision and judgment was a final resolution of those two proceedings. In that decision and judgment order, the Environmental Division explicitly ruled that neighbors are "precluded from bringing violations predicated on an alleged change in use of Hale Mountain's property prior to February 26, 2008." Neighbors ultimately elected not to appeal that ruling, and thus they are precluded from doing so here. In any event, we find nothing in the record in this proceeding where neighbors have

made a specific allegation of new improvements or new violations occurring after February 2008.

¶ 25. ▮ For a similar reason, we also reject neighbors' argument that the Environmental Division erroneously refused to consider their allegations of groundwater pollution from spent ammunition. In its December 15, 2009 final judgment order, the court explicitly ruled that it would not consider neighbors' request that it "determine whether the deposition of lead shot or shells constitutes a public health hazard, since the Bylaws provide no jurisdictional authority for this Court to consider such claims." Neighbors cannot circumvent that unappealed ruling in this later proceeding. See *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103 ("Under the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical.").

¶ 26. Neighbors' last argument is that the court misconstrued a town zoning bylaw requiring applicants for site plan approval to present copies of all state permits and licenses required for the proposed project.[4] Neighbors point out that the Environmental Board required Hale Mountain to obtain an Act 250 land use permit for three specific improvements, but that the Act 250 permit submitted into evidence entailed only two of the improvements in the Board's decision and not a third concerning construction associated with the beagle club. According to neighbors, the absence of a permit covering each of the improvements cited in the Board's order should overcome the testimony of Hale Mountain's experts that the club had obtained all necessary state permits.

¶ 27. The record in this case demonstrates that Hale Mountain obtained all of the required permits. In its 2005 and 2008 decisions, the Environmental Board cited three general improvements that required an Act 250 permit. One was associated with beagle club activities that had been discontinued. The Board's

---

[4] This issue is premature because the bylaw imposes the disputed requirement as a condition of obtaining site plan approval. The decision we are reviewing came before Hale Mountain's site plan approval presentation to the DRB. The DRB's site plan approval is pending in the Environmental Division and is not before us. Nevertheless, the Environmental Division dealt with the requirement in the decision before us, and, therefore, we address it.

2005 decision acknowledged Hale Mountain's testimony that most of the beagle club improvements would be removed in the future, but stated that any improvements remaining on the site would require an Act 250 permit to ensure that there would be "no lasting Act 250 impacts from these improvements or their removal." The orders at the end of the 2005 and 2008 decisions required an Act 250 permit, in relevant part, for beagle club improvements "that remain on the Project Tract," without reference to any removal activities.

¶ 28. At the merits hearing, Hale Mountain presented into evidence expert testimony and various exhibits indicating that it had obtained the necessary state and local permits. The Environmental Division acknowledged this evidence and noted on the record that it did not "have any evidence here that there's been a determination by an engineer or by an Act 250 coordinator that there was a permit needed for something that they didn't get." Based on the fact that the question of Act 250 compliance was not before it and that there was no evidence that Hale Mountain failed to comply with Act 250 requirements, the court rejected neighbors' contention that Hale Mountain had failed to get all of the required state permits, specifically an Act 250 permit for the remaining beagle club structures or their removal. In its October 4, 2012 decision, the court reiterated that there was no evidence that Hale Mountain's enumerated improvements required further state land use review.

¶ 29. ■ We find no basis to overturn the Environmental Division's determination on this point. Considering the lack of specific evidence on what was done and when with respect to the beagle club improvements, the arguably ambiguous and inconsistent language in the Environmental Board's 2005 and 2008 decisions and orders regarding the extent to which the beagle club improvements required an Act 250 permit, and the absence of any enforcement action on account of any alleged Act 250 violations, neighbors cannot demonstrate the absence of all necessary state permits merely by pointing out that the state land use permit obtained by Hale Mountain did not include improvements associated with the beagle club. As the Environmental Division noted, Hale Mountain presented evidence that it had obtained all the necessary permits, and neighbors failed to provide any contrary evidence other than the aforementioned. Given this state of the record, the court was not compelled to reject Hale

230

Mountain's application based on its alleged failure to abide by the town bylaw requiring applicants to submit copies of all necessary state permits.

*Affirmed.*