2014 VT 54




In re Hale Mountain Fish &
Game Club (2012-412)


 


2014 VT 54


 


[Filed 06-Jun-2014]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.


 


 



 
 2014 VT 54

 

  



 
 No. 2012-412

 

  



 
 In re Hale Mountain Fish &
 Game Club

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
  

 

 
 
 Superior Court,

 
 Environmental Division

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 November Term, 2013

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Thomas
 S. Durkin, J.

 

 
 
  

 

 Herbert G. Ogden of Ogden Law Offices,
P.C., Danby, for Appellants.


 


Rodney E. McPhee of Kenlan, Schwiebert, Facey & Goss,
P.C., Rutland, for Appellee.


 


 


PRESENT:    Dooley, Skoglund, Robinson and
Crawford, JJ., and Eaton, Supr. J.,


                    
Specially Assigned


 


 


¶ 1.            
DOOLEY, J.   Neighboring landowners Owen and Katherine
Beauchesne bring their fourth appeal to this Court from various proceedings
involving their complaints challenging the operation of Hale Mountain Fish and
Game Club.  Here, neighbors appeal the judgment of the Environmental
Division of the superior court that Hale Mountain is entitled to reissuance of
a zoning permit for certain enumerated improvements on its property once it
received site plan approval from the Town of Shaftsbury Development Review
Board.  Based primarily on principles of preservation and res judicata, we
affirm the court’s judgment.


¶ 2.            
Hale Mountain’s 215-acre site in the Town of Shaftsbury has been used
continuously since 1949 as a shooting range.  In the late 1980s, neighbors
purchased adjoining property on which they run a riding center.  Over the
years, Hale Mountain made numerous improvements to the property without
obtaining either zoning permits or permits under Act 250, which became law in
1970.  In the 1990s, Hale Mountain and neighboring landowners attempted to
resolve issues concerning the timing and frequency of shooting at the club, but
disagreements persisted, resulting in litigation that continues today.


¶ 3.            
Neighbors have challenged Hale Mountain’s operation in several forums
based on multiple legal theories,[1]
but the primary battlegrounds have been proceedings before the former
Environmental Board addressing Act 250 jurisdiction and before the Town of
Shaftsbury administrative bodies and the Environmental Division addressing
zoning permit requests and enforcement actions.  In our summation of the
procedural history of this case, we detail these proceedings separately,
although they proceeded simultaneously at times.


¶ 4.            
We first summarize the Environmental Board proceedings, which supplied
the findings that are the subject of the Environmental Division’s decision on
appeal.  In June 2004, in response to neighbors’ complaint, the District 8
Environmental Commission Coordinator concluded that both material and
substantial changes at the club necessitated Act 250 review.  Hale
Mountain appealed to the Environmental Board, which rendered a plurality
decision in August 2005 following a site visit and two-day public
hearing.  That decision limited Act 250 review to three specific
improvements, which the Board found to substantially change a preexisting
development such that they had the potential to have a significant impact with
regard to the Act 250 criteria: (1) installation of a new well and wastewater
disposal system in 1983; (2) installation of a replacement garage and new
clay-target storage trailer; and (3) improvements in connection with the
commencement and operation of a beagle club in 1979.[2]


¶ 5.            
Neighbors appealed to this Court, arguing that the Board erred by not
requiring comprehensive Act 250 review and by not making adequate findings to
support its decision.  In a September 2007 decision, we agreed with
neighbors’ second point and remanded the matter for the Board to make
additional findings, specifically on any change in the intensity of use and
level of noise at the club since the 1970s and on the impact of any
improvements on streams and wetlands.  In re Hale
Mountain, 2007 VT 102, ¶¶ 10-11, 182 Vt. 606, 939 A.2d 498 (mem.).


¶ 6.            
In February 2008, without taking additional evidence, the Board on
remand issued seventeen supplemental findings of fact, including that: (1)
although the level of shooting activity and noise at the club “had fluctuated
slightly over the years,” there had “not been an increase in intensity of
shooting and noise after 1970 as compared to pre-1970 levels”; (2) the
post-1970 improvements to the shooting facilities had “not caused an increase
in use, shooting, or capacity at [the club] sufficient to cause any potential
for significant impact under any Act 250 criterion”; and (3) the deposition of
clay pigeons and spent ammunition near streams and wet areas had occurred
before 1970 “without an increase in deposition or accumulation rates since that
time.”  Hence, the Board reiterated its conclusions that there had been no
significant increase in shooting or noise at the club over pre-1970 levels and
that “the only substantial changes to this grandfathered shooting range that
require an Act 250 permit are the discrete changes” found in the original Board
decision.


¶ 7.            
Neighbors again appealed to this Court, arguing that the Board’s
findings were not supported by sufficient evidence and that its decision was
precluded by its own precedent.  In a February 2009 decision, we affirmed
the Board’s decision, stating that neighbors had “not demonstrated a basis on
which to overturn either the Board’s factual findings or the Board’s legal
conclusion that the Club has not made a substantial change to a pre-existing
project that would subject the entire project to an Act 250 permitting
process.”  In re Hale Mountain, 2009 VT 10, ¶ 8,
185 Vt. 613, 969 A.2d 691 (mem.).


¶ 8.            
Meanwhile, in April 2004, neighbors’ attorney sent the Town of
Shaftsbury zoning administrator a letter asking him to enforce the town’s
zoning regulations by requiring Hale Mountain to obtain permits for nearly
twenty listed activities.  In May 2004, the zoning administrator responded
in writing that he saw no violation of the town’s zoning bylaws.  In his
response, the zoning administrator briefly addressed the alleged violations and
nine additional questions, indicating either that the use or structure
preexisted the 1980 bylaws, that no permit was required, that a permit had been
issued, or that no evidence indicated any violation.  The town zoning
board of adjustment (ZBA) declined to direct enforcement actions against Hale
Mountain, and neighbors sought relief in the superior court’s Environmental
Division.[3] 
That appeal, docket number 149-8-04 Vtec, was eventually consolidated with
another case, docket number 259-12-05 Vtec, in which the neighbors appealed
from the town’s refusal to act on their May 2005 demand for enforcement of the
zoning bylaws. 


¶ 9.            
After denying neighbors’ motion for summary judgment in a March 2008
decision, the Environmental Division issued a supplemental interim decision in
November 2008 denying the parties’ cross-motions for summary judgment on the
ultimate question of whether Hale Mountain had violated the town’s zoning
bylaws, but ruling that: (1) the fifteen-year statute of limitations in 24
V.S.A. § 4454(a) did not preclude allegations of zoning violations that
occurred after May 24, 1989; and (2) “the determinations of the former
Environmental Board have a preclusive effect on the same legal and factual
issues material to this appeal.”  In making the latter ruling, the court
thoroughly examined each of the issue preclusion criteria set forth in Trepanier
v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587
(1990).  That decision was not appealed.


¶ 10.         On
December 15, 2009, nearly a year after we upheld the Environmental Board’s
factual findings in support of its conclusion that Hale Mountain had not made
substantial changes to its preexisting operation so as to require Act 250
review of the entire project, the Environmental Division issued a third interim
decision.  In that decision, the court listed the nineteen improvements at
the club alleged by neighbors to have occurred between the early 1990s and
2004.  The neighbors never contested that the Hale Mountain activities
were permitted uses in the zoning district but argued that Hale Mountain needed
permits for its land developments.  Hale Mountain argued that its club
activities were permitted uses in the rural residential district and that no
change-of-use permits were required based on the Environmental Board’s findings
concerning the absence of increased activities at the club.  The court
agreed that the Board’s previous findings entitled Hale Mountain to summary
judgment on all of the use violations alleged by neighbors, but rejected the
notion that zoning permits were required only when a landowner changed a
property’s use.  The court ruled that the town’s zoning bylaws required
Hale Mountain to obtain permits for any new land development on the property,
explaining that whether permits were required for land development was a
separate question from whether there had been a “substantial change” to a
preexisting development.


¶ 11.         After
examining the alleged improvements, the court ruled that: (1) the applicable
statute of limitations barred the enforcement of alleged zoning violations that
occurred before May 24, 1989; (2) the Environmental Board’s previous findings
precluded neighbors from alleging zoning violations predicated on an alleged
change of use; (3) Hale Mountain was entitled to summary judgment regarding the
improvements numbered fourteen through eighteen; and (4) neighbors were
entitled to summary judgment regarding the improvements numbered one through
thirteen and nineteen because those activities constituted land development
requiring a zoning permit.  The court also: (1) dismissed docket number
259-12-05 Vtec as duplicative of the zoning enforcement allegations contained
in docket number 149-8-04 Vtec; (2) affirmed the December 2, 2005 decision of
the town ZBA dismissing neighbors’ second demand that the zoning administrator
commence enforcement proceedings; and (3) rejected neighbors’ request that it
determine whether lead shot or shells constitute a public health hazard, since
the zoning bylaws provided no jurisdictional authority for the court to
consider such claims.  The court did not rule on whether Hale Mountain’s
activities were permitted uses in the zoning district because neighbors did not
contest that issue.  On the same day, the court issued a final judgment
order to the same effect, which completed the proceedings in that court with
respect to the docket numbers noted above.  Neighbors appealed that final
judgment but later withdrew the appeal, which we dismissed in May 2010.


¶ 12.         In
July 2010, Hale Mountain filed an application to obtain zoning permits for the
improvements identified in the Environmental Division’s December 15, 2009
order.  Later that month, the zoning administrator approved the
application.  Neighbors appealed to the town development review board
(DRB), which held a public hearing on the appeal over two days in the fall of
2010.  In its October 20, 2010 decision on the application, the DRB stated
that the appeal was based on the fact that the zoning administrator issued
permits without DRB site plan approval.  Noting that site plan review and
approval were required under § 4.1.1.4 of the town’s zoning bylaws
permitting “group service uses,” including clubs, in the rural residential
district, the DRB granted neighbors’ appeal without prejudice to Hale Mountain
to renew its application after submitting site plans for the DRB’s
review.  Hale Mountain appealed the decision to the Environmental
Division.  Neighbors filed a cross-appeal that was later dismissed by the
court.


¶ 13.         After
issuing several decisions on procedural matters, the Environmental Division
held a merits hearing in August 2012 in the case on review here, docket number
190-11-10 Vtec.  Hale Mountain called three expert witnesses in support of
its application.  Neighbors testified on their own behalf but did not
present any expert testimony to contradict the evidence presented by Hale
Mountain.  From the bench at the conclusion of the hearing, and later in
an October 4, 2012 written decision, the court denied Hale Mountain’s
application without prejudice to allow the club to submit a site plan application
and supporting documents for review and approval by the DRB.  The court
ruled that “[o]nce such approval is received and becomes final, Hale Mountain
will be entitled to request that the Town of Shaftsbury Zoning Administrator
complete the ministerial act of re-issuing a zoning permit for the enumerated
improvements that were the subject of Hale Mountain’s original
application.”  In so ruling, the court stated that “Hale Mountain
presented credible facts to show that the enumerated improvements are permitted,
conditioned upon site plan approval being issued.”


¶ 14.         In
reaching this decision, the court explicitly identified the zoning ordinance
authorization for Hale Mountain’s uses.  Hale Mountain’s property is in
the rural residential zoning district.  Under § 4.1.1.4 of the
bylaws, certain “group service uses” are permitted uses in that district “after
site plan approval.”  Included in the list of group service uses are:
“[c]ommunity center, hall, libraries, museums, lodge, club, park or playground operated
by a governmental unit or non-profit organization.”  Shaftsbury
Zoning Bylaws § 4.1.1.4.3.  The court held that Hale
Mountain’s uses are “group service uses.”  Neighbors now appeal the
Environmental Division’s October 4, 2012 decision.  


¶ 15.         After
the Environmental Division issued its decision, Hale Mountain applied for site
plan approval and renewed its application for zoning permits.  In April
2013, the DRB approved the site plans and permit applications.  Neighbors
appealed those rulings to the Environmental Division, where the matter is
currently stayed pending this Court’s decision in the instant appeal.


¶ 16.         In
their appeal from the Environmental Division’s October 4, 2012 decision,
neighbors argue that the court erred by: (1) determining that the only relevant
zoning bylaw at issue is the group service uses bylaw; (2) applying issue
preclusion to events occurring after the Environmental Board last took evidence
in 2005 and to issues not previously decided; and (3) concluding that Hale
Mountain could obtain a zoning permit without having all the necessary state
permits.  In its responsive brief, Hale Mountain primarily raises
principles of issue and claim preclusion and mootness.


¶ 17.         Neighbors
first argue that the Environmental Division erred in assuming, based solely on
the fact that Hale Mountain presents itself as a club, that the only relevant
town zoning bylaw is the group service uses bylaw and that the actual use the
club made of its property is irrelevant.  In neighbors’ view, a shooting
range is neither a permitted nor a conditional use under the town’s bylaws and
therefore cannot be approved based merely upon the fact that Hale Mountain’s
corporate name includes the word “club.”  Comparing the other types of groups
listed in the group service uses zoning bylaw, neighbors assert that a shooting
range cannot be considered a club as the word is intended in the bylaw. 
In fact, neighbors argue that applying the group service uses bylaw as the
court did violates the equal protection clause of the Fourteenth Amendment to
the United States Constitution and the common benefits clause in Chapter I,
Article 7 of the Vermont Constitution.


¶ 18.         Upon
review of the record, we conclude that neighbors have waived these arguments by
failing to raise them before the Environmental Division in the instant
proceeding, and that, in any event, principles of res
judicata preclude them from raising the issues in light of the Environmental
Division’s final judgment in docket numbers 149-8-04 Vtec and 259-12-05
Vtec.  “Normally issues not raised at the trial court cannot be raised on
appeal.”  Taylor v. Fletcher Allen Health Care, 2012 VT 86, ¶ 14,
192 Vt. 418, 60 A.3d 646; see State v. Rideout, 2007 VT 59A, ¶ 19, 182
Vt. 113, 933 A.2d 706 (“As a general rule, we will not consider issues that
were not raised with specificity and clarity at trial.”).  Here, although
neighbors questioned at times whether Hale Mountain was a nonprofit
corporation, they never argued that: (1) Hale Mountain should not be considered
a club under the group service uses bylaw; (2) designation as a club did not
prevent an independent review of whether a shooting range is a permitted use;
or (3) exclusively applying the group service uses bylaw in this case would
violate the federal or state constitutions.


¶ 19.         At
oral argument before this Court, neighbors asserted that they had no
opportunity to make such arguments before the Environmental Division because
the court did not indicate that it was going to rely upon the group service
uses bylaw until it made findings on the record at the August 28, 2012
hearing.  The record does not support this assertion.  Indeed, in its
October 20, 2010 decision that was appealed to the Environmental Division, the
DRB explicitly relied upon the group service uses bylaw in determining that
Hale Mountain was required to seek site plan approval before obtaining permits
for the improvements to the club.  Thus, neighbors were on notice that the
DRB, and later the court, understood that Hale Mountain’s application was being
considered under the group service uses bylaw.  Nevertheless, they never
raised at trial the club issue that they now seek to raise for the first time
on appeal.  Accordingly, we decline to consider it.  We make no
determination regarding the merits of the court’s assumption that Hale
Mountain’s uses were permitted club uses under the town’s bylaws.


¶ 20.         In
conjunction with their contention that Hale Mountain’s shooting range is not a
club such as to make it a permitted use subject only to site plan review,
neighbors argue that because the shooting range is a preexisting nonconforming
use, Hale Mountain must demonstrate that the additional structures it built on
its property were not expansions of a nonconforming use.  This argument,
as with neighbors’ challenge to the Environmental Division’s assumption of a
permitted club use, is precluded by their failure to raise it below.


¶ 21.         In
any event, even if neighbors had preserved their nonconforming use argument, we
would agree with Hale Mountain that the argument is precluded by the
Environmental Board’s findings and determination that activities have not
increased at that shooting range since the 1970s.  In the original zoning
proceedings, the town zoning administrator concluded that the Hale Mountain
shooting range was grandfathered as a preexisting use because it had been in
operation since the late 1940s, many years before the town first implemented
its zoning regulations in 1980.  As far back as December 2005 in docket
number 259-12-05 Vtec, one of the many issues listed by neighbors for review by
the Environmental Division was whether the town zoning administrator should
bring an enforcement action against Hale Mountain for building and maintaining
nonconforming structures.  In its December 15, 2009 decision and final
judgment, the Environmental Division concluded that the Environmental Board’s
findings concerning the nature and extent of Hale Mountain’s activities since
the 1970s precluded neighbors from bringing violations predicated upon an
alleged change of or increase in use.  Neighbors initially appealed that
final judgment to this Court but ultimately withdrew their appeal, which we
then dismissed.  Accordingly, neighbors cannot now challenge the
Environmental Division’s determination that they are barred by the principle of
issue preclusion from alleging violations based on a change or increase in use.


¶ 22.         Neighbors
argue, however, that: (1) the Environmental Division’s focus on the group
service uses bylaw is inconsistent with the reasons it gave in an earlier
ruling for concluding that they had standing to oppose Hale Mountain’s appeal
of the DRB’s denial of their application for zoning permits; and (2) the
court’s comments from the bench at the August 28, 2012 hearing suggesting that
neighbors can still raise in a later proceeding whether the improvements at
issue were an expansion of a nonconforming use as opposed to mere maintenance
of that use are inconsistent with its later conclusion in its October 4, 2012
decision that Hale Mountain is entitled to zoning permits once it obtains site
plan approval.  Regarding both points, the October 4 decision is the
controlling order on appeal.  The fact that the court’s earlier standing
decision was based in part on neighbors’ statements concerning how they were
impacted by Hale Mountain’s alleged increased activities at the club did not
preclude the court from relying on either principles of res judicata or the
group service uses bylaw in ultimately ruling on the issues brought by
neighbors in the present proceeding.  Similarly, the court’s comments at
the final hearing in this proceeding, which were plainly not intended as
findings, did not prevent the court from determining that neighbors were
precluded from alleging violations predicated on increased use or from ruling
that Hale Mountain had demonstrated that they were entitled to permits once
they obtained site plan approval.


¶ 23.         Next,
neighbors argue that the Environmental Division erred by applying issue
preclusion to events that occurred after the Environmental Board rendered its
findings in 2005 and to issues not previously decided.  According to
neighbors, because the Board took no evidence after March 2005, issue preclusion
should not bar them from presenting evidence of what happened after that
time.  Neighbors complain that the court blurred the distinction between
evidence gathered by the Board and facts arising after the Board closed
evidence in the Act 250 case.  In further support of their argument,
neighbors point to an affidavit they submitted in docket number 190-11-10 Vtec,
the case before us, in which they stated that “[t]he alterations to the
shooting areas that are covered by the zoning permit have resulted in increased
shooting and hence increased noise since the Environmental Board took evidence
in 2005.”


¶ 24.         This
argument is precluded by neighbors’ failure to appeal the Environmental
Division’s December 15, 2009 decision.  In docket numbers 149-8-04 Vtec
and 259-12-05 Vtec, as noted, neighbors cited multiple improvements and
activities that they claimed required zoning permits.  The Environmental
Division’s December 15, 2009 decision and judgment was a final resolution of
those two proceedings.  In that decision and judgment order, the
Environmental Division explicitly ruled that neighbors are “precluded from
bringing violations predicated on an alleged change in use of Hale Mountain’s
property prior to February 26, 2008.”  Neighbors ultimately elected not to
appeal that ruling, and thus they are precluded from doing so here.  In
any event, we find nothing in the record in this proceeding where neighbors
have made a specific allegation of new improvements or new violations occurring
after February 2008.


¶ 25.         For a
similar reason, we also reject neighbors’ argument that the Environmental
Division erroneously refused to consider their allegations of groundwater
pollution from spent ammunition.  In its December 15, 2009 final judgment
order, the court explicitly ruled that it would not consider neighbors’ request
that it “determine whether the deposition of lead shot or shells constitutes a
public health hazard, since the Bylaws provide no jurisdictional authority for
this Court to consider such claims.”  Neighbors cannot circumvent that
unappealed ruling in this later proceeding.  See Faulkner v. Caledonia
Cnty. Fair Ass’n, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103 (“Under the
doctrine of claim preclusion, a final judgment in previous litigation bars
subsequent litigation if the parties, subject matter, and cause(s) of action in
both matters are the same or substantially identical.”).


¶ 26.         Neighbors’
last argument is that the court misconstrued a town zoning bylaw requiring
applicants for site plan approval to present copies of all state permits and
licenses required for the proposed project.[4]  Neighbors point out that the Environmental
Board required Hale Mountain to obtain an Act 250 land use permit for three
specific improvements, but that the Act 250 permit submitted into evidence
entailed only two of the improvements in the Board’s decision and not a third
concerning construction associated with the beagle club.  According to
neighbors, the absence of a permit covering each of the improvements cited in
the Board’s order should overcome the testimony of Hale Mountain’s experts that
the club had obtained all necessary state permits.


¶ 27.         The
record in this case demonstrates that Hale Mountain obtained all of the
required permits.  In its 2005 and 2008 decisions, the Environmental Board
cited three general improvements that required an Act 250 permit.  One was
associated with beagle club activities that had been discontinued.  The
Board’s 2005 decision acknowledged Hale Mountain’s testimony that most of the
beagle club improvements would be removed in the future, but stated that any
improvements remaining on the site would require an Act 250 permit to ensure
that there would be “no lasting Act 250 impacts from these improvements or
their removal.”  The orders at the end of the 2005 and 2008 decisions
required an Act 250 permit, in relevant part, for beagle club improvements
“that remain on the Project Tract,” without reference to any removal
activities.


¶ 28.         At
the merits hearing, Hale Mountain presented into evidence expert testimony and
various exhibits indicating that it had obtained the necessary state and local
permits.  The Environmental Division acknowledged this evidence and noted
on the record that it did not “have any evidence here that there’s been a
determination by an engineer or by an Act 250 coordinator that there was a
permit needed for something that they didn’t get.”  Based on the fact that
the question of Act 250 compliance was not before it and that there was no
evidence that Hale Mountain failed to comply with Act 250 requirements, the
court rejected neighbors’ contention that Hale Mountain had failed to get all
of the required state permits, specifically an Act 250 permit for the remaining
beagle club structures or their removal.  In its October 4, 2012 decision,
the court reiterated that there was no evidence that Hale Mountain’s enumerated
improvements required further state land use review.


¶ 29.         We
find no basis to overturn the Environmental Division’s determination on this
point.  Considering the lack of specific evidence on what was done and
when with respect to the beagle club improvements, the arguably ambiguous and
inconsistent language in the Environmental Board’s 2005 and 2008 decisions and
orders regarding the extent to which the beagle club improvements required an
Act 250 permit, and the absence of any enforcement action on account of any
alleged Act 250 violations, neighbors cannot demonstrate the absence of all
necessary state permits merely by pointing out that the state land use permit
obtained by Hale Mountain did not include improvements associated with the
beagle club.  As the Environmental Division noted, Hale Mountain presented
evidence that it had obtained all the necessary permits, and neighbors failed
to provide any contrary evidence other than the aforementioned.  Given
this state of the record, the court was not compelled to reject Hale Mountain’s
application based on its alleged failure to abide by the town bylaw requiring
applicants to submit copies of all necessary state permits.


Affirmed.



 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

  














[1] 
In two March 2010 decisions, the Environmental Division granted Hale Mountain
and its principals summary judgment in neighbors’
separate actions sounding in fraud and nuisance.  These issues are not
involved in this appeal.  The rest of the issues and theories arose in the
state and local permitting proceedings as summarized in the text.







[2]
 In 1979, the Pittstown Beagle Club began using Hale Mountain property for
beagle running.  The beagle club made improvements to facilitate their
use: installation of a rabbit pen, road improvements and extension of a
culvert, removal of some trees, and installation of a portable toilet. 
The beagle club stopped using the property before 2005.







[3]
 The Environmental Division was then known as the Environmental Court.







[4]
 This issue is premature because the bylaw imposes the disputed
requirement as a condition of obtaining site plan approval.  The decision
we are reviewing came before Hale Mountain’s site plan approval presentation to
the DRB.  The DRB’s site plan approval is pending in the Environmental
Division and is not before us.  Nevertheless, the Environmental Division
dealt with the requirement in the decision before us, and, therefore, we
address it.